[No. 6433.]

## BROWN v. LINN.

1. **Fraud—False Representations**—A false representation as to material facts, known by the party making it to be false, and made for the purpose of inducing one to whom it is made to enter into a proposed exchange of lands, which such party relies upon, and by which he is induced to make the exchange, contains all the essential elements of a fraud.—(446-449)

2. ——**Opinions**—One offering lands in exchange for others represents that he is the absolute owner thereof, in possession, and entitled to convey. These are statements of fact, and not merely expressions of opinion.—(447)

3. ——**Conduct as a Representation**—The conduct and bearing, in negotiation and correspondence, of one offering lands for exchange, is to be regarded as an affirmative representation.—(447).

4. ——**Right to Rely on Representations**—One offering to convey lands situate in another state represents that he has an absolute title, and is in possession by a tenant. In fact the party in possession holds a contract of purchase, not of record, and which therefore would not appear upon any abstract of the record title. Held, the party to whom the representations were made at the initiation of the transaction, and in connection with an offer not accepted, the representation never having been retracted or modified, during the subsequent, continuous negotiation, is entitled to rely thereon.—(447, 448)

5. ——**Presumptions**—Misrepresentations as to the subject-matter of a proposed transaction in land, of such character as to

naturally impose upon the other party, and induce the proposed exchange, and which are followed by such exchange, are presumed to have been made with the intent that they should be relied upon.—(448)

6. **Vendor and Purchaser—Vendor's Title**—One who has entered into a contract to sell lands to a tenant who is in possession thereof, under him, is no longer the absolute owner and in possession. And it seems that although, having afterwards assumed to convey such land to a third person, in exchange, he secures a release of his right from the tenant, such release, not communicated to the other party to the exchange, is no bar to a bill subsequently brought by the latter, to annul such exchange. —(446)

7. ——**Right to Rescind**—One who, by false representation upon which he relied, and had the right to rely, has been induced to exchange his land for other lands, may, on discovery of the deceit, rescind.—(446-450)

8. **Pleading—Complaint—Construction**—One seeking the rescission of an exchange of lands avers that defendant represented that he was the owner in fee of the land offered in exchange, and in possession thereof, and that relying upon these representations, and induced thereby, plaintiff made the exchange. The representations were not alleged to have been false, nor described by any word of similar import; but it was averred that defendant, previous to the representation, had entered into a contract to sell the lands to another, who was in possession as purchaser, under this contract, and had been so in possession for more than a year before the exchange. Held, sufficient on demurrer.—(449, 450)

9. ——**Demurrer**—Allegations of fact are taken as true on demurrer to the pleading.—(450)

10. **Fraud—Scope of the Inquiry**—In an action to be relieved of a fraud, the evidence is allowed a wide range.—(450)

*Appeal from Mesa District Court*—Hon. SPRIGG SHACKLEFORD, Judge.

Messrs. GRIFFITH & WATSON for appellant.

Mr. A. H. DAVIS and Mr. T. M. MORROW for appellee.

Mr. JUSTICE MUSSER delivered the opinion of the court:

The appellant Brown, who resided in Missouri,

.exchanged 100 acres of land situated in that state for 14 acres situated in Mesa County, in this state, belonging to appellee Linn, who resided thereon. Deeds were exchanged through Brown's son-in-law, who resided in Mesa County, and Linn delivered possession of the Colorado land to Brown. As a part of the transaction, Brown paid Linn $200.00 in cash and assumed an incumbrance of $600.00 on the Mesa county land. The negotiations were begun several months before, when Brown was visiting in Mesa County, and continued after his return to Missouri by direct correspondence and through the son-in-law. The first proposal was not accepted by Linn. He made a counter-proposition through the son-in-law, which was accepted by Brown, and the deeds were exchanged. In the course of the negotiations, Brown, in a letter to Linn, described the land, its location and improvements, and said that he had "a good abstract of title and deed, and the land is paid for and clear"; and, in another letter, written a few days afterwards, Brown said he had sent a deed and abstract of perfect title to his son-in-law; that he would give full possession of the Missouri land on a certain date, and wanted to know at once what Linn would do, so that the man on the land might have sufficient time to enable him to move conveniently before that date. Delay in the negotiations prevented the exchange of deeds until a few days after the date mentioned by Brown for delivery of actual possession. A few days after the exchange of deeds, Brown came to Mesa County, and, upon inquiry from Linn, informed the latter that the Missouri land had been leased for the year to one Jackson for $90.00 and payment of taxes. This appears to have been satisfactory to Linn, and his only concern seems to have been as to the time when Jackson would pay him the rent. A short time after this, Linn learned that Brown and

Jackson had entered into a contract of purchase and sale of the land more than a year before. Upon inquiry, Brown informed Linn, in substance, that Jackson had forfeited the contract of purchase and sale, and was to surrender it, and that Brown would make Jackson surrender. A short time after this, Linn went to Missouri to investigate. He found that Jackson was in possession of the land, under the contract, and had been in such possession several months before Linn and Brown had exchanged deeds, and Jackson said he expected to remain in possession until he paid for the land under his contract, unless Brown bought him out. Linn returned at once to Colorado, and three or four days thereafter began this action to obtain a rescission of the contract with Brown and a reconveyance of the Mesa County land, after being informed by Brown that the latter had made no settlement with Jackson, and, after offering to restore to Brown all that Linn had received, and being informed that Brown would do nothing until twelve men said he should.

The foregoing facts appear mostly from uncontradicted evidence, and from the preponderance of evidence where there was any conflict. The findings and judgment of the lower court were in favor of Linn, and were in line with the facts as above stated. Among the findings, was the following:

"The transaction, so far as the defendant was concerned, shows an utter lack of good faith and fair dealing on his part."

Brown endeavored to make it appear by his evidence, and his answer alleges, that he had Jackson's consent to trade the land, and that he secured the surrender and cancellation of the contract, and settled with Jackson, after the exchange of deeds, and a few days before the action was brought, and that, at the time of the cancellation, he rented the land to Jack-

son under authority from Linn. The court, however, found that Brown did not settle with Jackson and procure the cancellation of the contract until about three months after the action was brought. Even if Brown did secure a settlement with Jackson a few days before the commencement of the action, it is not shown that Linn was informed of it and that he knew anything about it. What Brown said in his letters could but produce the conviction that he was the absolute owner of the Missouri land in fee simple, and in possession thereof through a tenant of some kind. These were not mere expressions of opinion with reference to the matter, but were statements of facts. Aside from this, Brown's conduct and bearing in the negotiations, prior to and at the time of the exchange of deeds, as shown by the general tone of his letters, were the conduct and bearing of an absolute proprietor whose right to trade his land and to convey it absolutely was unquestioned, and were such as would naturally produce the conviction that he was such owner and in possession of the land either personally or through a tenant. Such conduct and bearing was an affirmative statement that the fact of such ownership and possession existed.—2 Pom. Eq. Jur., sec 877.

Brown's contract with Jackson was not recorded and would not appear on an abstract of title if one had been furnished, certified to the date of the exchange of deeds. Jackson's possession of the land in Missouri was the only notice that Linn had of Jackson's rights, whatever they might be. Linn was in Colorado. Under such circumstances, there can be no question that Linn had the right to rely upon Brown's representations. In the brief, it is claimed that the representations made by Brown in his letters were made while the first proposition was under consideration, and because that proposition was not

carried out, what was said in the letters could have no bearing on the contract made and which was the result of another proposition. The position is not at all tenable. The representations made by Brown were never changed by him, but were permitted to stand and to have the same effect in the consideration of the second proposition as in the consideration of the first. The negotiations were continuous, and were made up of proposition and counter-proposition, as usually characterize such matters. Brown was not the absolute owner of the land in fee simple and in possession thereof either by himself or through a tenant. Jackson was in possession under his contract of purchase. — *Loventhal v. Home Ins. Co.,* 112 Ala. 108; *Imp. F. Ins. Co. v. Dunham,* 117 Pa. St. 460; *M. M. Ins. Co. v. Rhea & Son,* 123 Fed. 9.

This was true even if Brown had talked with Jackson before making the exchange, for, from Brown's own evidence, it appears that, whatever took place between him and Jackson before the exchange, if anything, did not result in a surrender or cancellation of the contract between them, nor make Jackson a tenant of Brown. Jackson's contract and relation remained the same as before. Brown knew of the contract with Jackson, and the latter's possession, and knew that what he represented in his letters and by his attitude was not a correct statement of the facts as they existed. These misrepresentations related to the subject of the transaction, and were of such a character that they would naturally induce Linn to make the exchange, and were followed by the exchange. It is, therefore, presumed that Brown made them for the purpose and with the intention of having them relied upon and of inducing Linn to make the exchange.—2 Pom. Eq. Jur., sec. 880.

It thus appears that the representations made by Brown were false statements of material facts, concerning the subject of the transaction, known by Brown to be untrue, made for the purpose of inducing the exchange of land, and relied upon by Linn, who actually made the exchange. Here, in the simplest form, are all the essential elements necessary for a misrepresentation to constitute fraud in any case.—2 Pom. Eq. Jur., sec. 876. It has been held that, in a sale of land induced by false representations of the vendor, affecting the sufficiency of his title, upon which representations the vendee had a right to rely and did rely, it is immaterial whether the vendor had knowledge or not of the falsity of the representations.—*Orendorff v. Tallman,* 90 Ala. 441. Under the facts present, Linn may rescind the contract.—*Orendorff v. Tallman, supra; Ballou v. Lucas,* 59 Ia. 22; *Vaughn v. Smith,* 34 Ore. 54; 29 Am. & Eng. Ency. of Law, 657.

Here, as in the court below, it is contended that the complaint does not state facts sufficient to constitute a cause of action. Usually complaints contain a superabundance of words and allegations. For some reason, this one lacks that usual characteristic and narrowly escapes being subject to the demurrer. The complaint, among other allegations, alleges in substance that Brown represented to Linn that he was the absolute owner in fee and in possession of the Missouri land, and that Linn, relying on these representations, made the exchange. The objection which appears to be made to the complaint is, that it is not alleged that these representations upon which Linn relied were false. It is true that the complaint nowhere describes the representations by the word "false," or word of similar import, but it does allege, in substance, that Brown and Jackson had entered into a contract of sale and purchase of

the land, and that Jackson was in possession of the land as the purchaser, under this contract, and had been in such possession for more than a year before the commencement of the action and exchange of deeds. The one allegation states the representations, the other allegation states facts, which, if true, show the representations to be false. The facts alleged must be taken as true on demurrer, and the conclusion follows that the representations are false. This is sufficient as against the demurrer.—*Miller v. Hall,* 14 Col. App. 367; *Kilpatrick v. Haley,* 14 Col. App. 399.

Brown paid the $600.00 mortgage on Linn's land. The court ordered Linn to pay $800.00 into court for Brown, covering the amount paid on the mortgage, and the $200.00 which Brown had paid Linn in the exchange. It is now claimed that Brown paid some interest on the mortgage and should receive this interest. It was alleged in the complaint that Brown had paid the $600.00 mortgage and the $200.00. In his answer, Brown alleged that, in the agreement for exchange, he "was to and did pay $800.00, the difference in value, viz., $200.00 in cash and the mortgage of $600.00 which he had assumed." If Brown paid more than $800.00, it does not so appear from the answer or the evidence.

Several errors are assigned on the admission of testimony over objections. The trial was to the court. The inquiry covering an alleged fraudulent transaction, calling for the interposition of equity, was wide in its scope. It does not appear that the evidence was inadmissible. Several other errors are assigned which need no particular notice, because they are manifestly without merit. The judgment is affirmed.                    *Affirmed.*

Chief Justice Campbell and Mr. Justice Garrigues concur.