## No. 9418.

### PLATT *v.* WALKER, ET AL.

Decided March 7, 1921.

Action for conversion. Judgment for plaintiffs.

*Reversed.*

1. PLEADINGS—*Complaint.* In an action for conversion, an allegation in the complaint: That plaintiffs bought from defendants, and the defendants sold and then delivered to plaintiffs the property in controversy, sufficiently alleges ownership and possession in plaintiffs.

2. ACTIONS—*Conversion.* It is immaterial in an action for conversion whether the property be converted innocently or knowingly. The gist of the action is the unauthorized appropriation of one's property.

3. INSTRUCTIONS—*Conversion—Fraud.*  Fraud not being necessary to a recovery of actual damages in an action for conversion, the giving of an instruction to the effect:  That if the jury find for plaintiffs, they should fix the damage at such amount as they find from the evidence to be the natural and necessary result of the fraud complained of, is error.

4. FRAUD—*Action.*  One who is defrauded in the purchase of property has a right to rescind, or to affirm the contract and recover such damages as he has suffered by the fraud.

5. DAMAGES—*Measure of—Instructions.*  In an action for damages, upon whatever theory the cause is tried, it is the duty of the court to instruct the jury as to the measure of damages under such theory.

6. EVIDENCE—*Similar Transactions.*  When motive or intent with which an act has been performed is material, evidence of similar acts at or about the same time, is admissible; but the law does not permit proof of other and distinct offenses merely for the purpose of showing that defendant has a criminal disposition or character likely to make him commit the act with which he is charged.

*Error to the District Court of the City and County of Denver, Hon. Harry S. Class, Judge.*

Mr. ERNEST MORRIS, Mr. A. M. STEVENSON, for plaintiff in error.

MR. JAMES J. SULLIVAN, for defendants in error.

*Department One.*

MR. JUSTICE TELLER delivered the opinion of the court.

DEFENDANTS in error had judgment in an action against the plaintiff in error for an alleged conversion of certain horses.  The parties will hereinafter be designated as in the trial court.

The defendants filed a general demurrer to the complaint which was overruled.  Thereupon they filed an answer and the cause proceeded to trial.  The jury returned a verdict for $700 actual damages and $3,000 exemplary damages. On motion of the defendants, so much of the verdict as awarded exemplary damages was set aside, and judgment

was entered for $700 actual damages. At the close of the trial the action was dismissed as to Hollis, one of the defendants.

The complaint alleges: "That on or about September 23, 1916, plaintiffs bought from the defendants and the defendants sold and then delivered to the plaintiffs one hundred and sixteen horses; that upon said sale and delivery, all of said horses were enclosed in a pen or corral in the City and County of Denver" and that thereafter "the defendants wrongfully and unlawfully forcibly broke into and entered said pen or corral and drove therefrom thirty-four of the horses belonging to the plaintiffs, and wrongfully and unlawfully converted the same to their own use."

The complaint further alleges that "for the purposes of deceiving, cheating and defrauding the plaintiffs, the defendants knowingly and maliciously drove or lead thirty-four other horses into said pen or corral" and that the substituted horses were practically of no value whatever.

The complaint further alleges that plaintiffs suffered actual loss of $4500, and that in the wrongful converting of the horses and the substitution of valueless horses, the defendants were guilty of malice, fraud and wilful deceit. The plaintiffs asked for $4500 actual damages, $4000 exemplary damages, and for body execution.

It is objected that the complaint contains no allegation that the horses were the property of, or in the possession of the plaintiffs when the conversion occurred. It having been alleged that the horses were purchased by and delivered to the plaintiffs, under a well known rule, it will be presumed that the condition alleged, that is possession taken by the purchasers, continued.

The case seems to have been tried in part upon the theory that, as charged in the complaint, the defendants had converted to their own use a number of plaintiffs' horses, and in part upon the theory that the action was for damages for fraud in the substitution of worthless horses for horses purchased.

The first paragraph of the complaint, treating it as alleg-

ing ownership and possession, states a cause of action in conversion. It was unnecessary to go farther and mention the substitution of poor horses for the good ones taken. It is immaterial in an action of conversion whether the property be converted innocently or knowingly. The gist of the action is the unauthorized appropriation of one's property. It would seem in this case that the allegations as to fraud are made with reference to the claim for exemplary damages. Plaintiff Walker testified that as soon as the horses arrived at Grand Island, Nebraska, the point to which they had been shipped, he discovered the presence of the thirty-four defective horses. He made no mention of this, however, to the defendants, from whom thereafter he bought horses largely, and this action was not begun until a little over six months after the alleged conversion. He had, however, within a few days of discovering the alleged fraud, demanded and received from the defendants a rebate of $42 on his purchase price, because of his claim that twenty-one head of the horses bought were not halter broken.

The court instructed the jury at some length as to fraud, stating that, if it be found that the horses were substituted as claimed, the transaction "is a fraud, cheat, deception or circumvention." No instructions were given as to the rule of damages in conversion, but the jury were instructed, over the objection of defendants, as follows:

"The jury are instructed that if you find the issues in this case for the plaintiffs, you shall fix their damage in such amount as you will find from the evidence to be a natural and necessary result of the fraud complained of."

The court further instructed the jury that in case they found damages resulting from the fraud, they might give exemplary damages as well as actual.

This left the jury without any guide as to the determination of the actual damages to be recovered in an action of conversion, which this undoubtedly was.

Fraud not being necessary to a recovery of actual damages on the case presented by the complaint, the fraud, if proved, could not be the basis of recovery. That would be

to permit the trial court, or plaintiffs' counsel, to abandon the case as stated, and the theory of the right to recover as shown by the complaint, and substitute therefor a different cause of action.

The allegation in the complaint is that the substituted horses were of no value. If that appeared by evidence to be the fact, the plaintiffs' measure of damages was the value of the horses taken at the time they were converted, with interest to the time of trial. This cause presents a question as to what is the legal effect of plaintiffs' failure to return, or offer to return the horses to the vendors.

It is alleged that one hundred sixteen horses were bought, and that thirty-four of those delivered were substitutes. Plaintiff testified that he sold one hundred of them, apparently as of one class. What he received for the others, or what was their value, does not appear. It would seem that in a case like this, a party finding that he had received horses not purchased should at once advise his vendors. The query arises whether or not, if with full knowledge he fails to offer to make return of the horses, he does not affirm the transaction. One who is defrauded in the purchase of property has, as is well known, a right to rescind, or to affirm the contract and recover such damages as he has suffered by the fraud. If he elects to rescind, he must act promptly. If he sues for damages for the fraud he must show that the property purchased under a misrepresentation was of less value than that which he supposed, and had a right to suppose he was getting.

Upon whatever theory the case was tried, it was the duty of the court to instruct the jury as to the measure of damages under such theory. The giving of the instruction quoted was prejudicial error.

A further objection is made to the action of the court in the admission of evidence of what is called a "similar transaction" some six months prior to the alleged conversion. This evidence was admitted upon statement of counsel for plaintiff that he would connect it up in point of time, to

show that the defendants were engaged in "switching horses."

It is well settled that when the motive or intent with which an act has been performed is material, evidence of similar acts, at or about the same time, is admissible. Subject to this, and perhaps one or two other exceptions, the law does not permit proof of other and distinct offenses; and never merely for the purpose of showing that defendant has a general criminal disposition, or a character likely to make him commit the act with which he is charged. *Shea v. U. S.*, 236 Fed. 97, 149 C. C. A. 307.

In the case cited the parties were charged with a conspiracy to use the United States mails in pursuance of a scheme to defraud. The scheme was to obtain money by a fake horse race. Evidence was admitted of a scheme, participated in by the defendants, at about the same time to defraud by the sale of worthless mining stock. Because of the admission of this evidence, the judgment was reversed; the court holding that the latter matter was of a different nature from that upon which the defendants were on trial, being similar only from the fact that they might be classified generally as confidence games. It was said that the latter scheme had no direct tendency to prove a scheme to defraud through fictitious horse race bets, except as it shows defendants to be of such a character as would render it likely that they might engage in other frauds. The rule is well settled that where such evidence is admissible it must relate to acts so recent as to throw light upon the intent at the time of the commission of the act under consideration. *Butler v. Watkins*, 13 Wall. 456, 20 L. Ed. 629; *Commonwealth v. Robinson*, 146 Mass. 571, 16 N. E. 452.

In Section 377 of Wigmore on Evidence it is said that the principle under which evidence of similar acts is admitted showing habit, plan or system is:

"That the instances must be numerous enough, and that they must have occurred under conditions so similar as to

indicate a system, plan, or habit of doing that particular thing under similar circumstances."

Applying these principles to the instant case, it appears that the evidence of a so-called similar transaction is wholly inadmissible:   First, for the reason that the transaction was too remote in point of time.   And, second, it was dissimilar in character.

It was alleged as a cause of action in this case that the defendants had converted plaintiffs' horses by taking out good horses and substituting poor horses therefor.   The evidence of a supposed similar instance was to the effect that plaintiff in error had caused one of his employes to take three horses, in the early spring of the year, to his own yard and there change the brands.   This was five or six months before the alleged conversion.   The defendant was charged not with the rebranding of horses, but the conversion of them.

Moreover, if the testimony of witnesses be accepted that plaintiff in error directed these substitutions to be made, there was no occasion for evidence as to his fraudulent intent; it appears conclusively from the facts, if the stories of the witnesses be true.   There are other assignments of error in rulings upon testimony which require no discussion, as on a retrial it is not likely that they will be repeated.

The judgment is reversed.

MR. JUSTICE ALLEN and MR. JUSTICE DENISON concur.