## No. 10,813.

### ERISMAN, ET AL. v. McCARTY,

Decided May 4, 1925.   Rehearing denied June 1, 1925.

Action for damages for fraud and deceit.   Judgment for plaintiff.

### *Reversed.*

1.  PLEADING—*Demurrer—Waiver.*   Where the sufficiency of a complaint is attacked by demurrer which is overruled, the error, if any, is waived if defendant proceeds without further objection.

2.  *Fraud—Complaint.*   Allegations of fraud concerning misrepresentations of mineral deposits and market value of stock, held insufficient.

3.  *Principal and Agent—Representations.*   The proper way to charge representations made by an agent, is to allege that the principal made them, and then upon the trial prove that the agent made them with the principal's knowledge, consent or authority.

4.  PRINCIPAL AND AGENT—*Pleading—Fraud.*   Allegations that defendant made various representations in behalf of his codefendants, charges them with nothing.

5.  FRAUD—*Pleading—Promise—Actionable Mis-representations.*   The representations by a defendant that he would issue and deliver to plaintiff a certain number of shares of stock, held to be a promise and not an actionable mis-representation.

6.  PLEADING—*Fraud.*   An allegation that defendant did not deliver corporate stock as promised amounts to an allegation of breach of contract, and not false representations.

7.  *Commingling of Causes of Action.*   Where two causes of action are stated in one count of a complaint, if there is no motion to separate, plaintiff can recover upon either, if proven, but not upon both in the present case.

8.  *Fraud—False Representations.*   In an action on tort based upon false representations, the false statement should be specifically negatived.

9.    *Evidence.* In a tort action involving contracts, the latter were merely evidential and so should not have appeared in the complaint.

10.   APPEAL AND ERROR—*Sufficiency of Evidence.* In an action for fraud and deceit, evidence held insufficient to support verdicts for plaintiff.

11.   PRINCIPAL AND AGENT—*False Representations.* A principal is not bound by the false representations of his agent made without his knowledge, consent or authority.

12.   JUDGMENT—*Body Judgment.* If an action is ex contractu there can be no body judgment, and if it cannot be determined whether it is in tort or on contract, there can be no execution against the body.

13.   SUMMONS—*Tort or Contract.* A summons stating that the action is for the recovery of money and interest thereon and attorney fees according to the terms of each held to show that the action is on contract.

14.   *Tort.* Summons in an action based on tort for false representations should show that the action was to recover damages for obtaining money from plaintiff by false and fraudulent representations, or by deceit.

15.   APPEAL AND ERROR—*Instructions—No Objection.* A judgment cannot be reversed for faulty instructions in the absence of objection on that ground.

16.   *Equivocal Instructions.* Where the instructions are equivocal and the reviewing court is unable to tell which theory the jury thought they were following, a body judgment will be reversed.

17.   FRAUD—*Trust Organization.* There is no objection to a trust organization, sometimes called a Massachusetts trust, nor is it per se fraudulent or deceitful.

18.   *Corporation or Trust—Jury Question.* Whether it was material to plaintiff to have stock in or to loan money to a corporation instead of a trust in which she invested money believing it to be a corporation in reliance on representations, held ordinarily for the jury.

19.   INSTRUCTIONS—*Fraud.* An instruction which classes promises with false statements of fact as grounds of action for deceit, is bad.

20.   *Erroneous Assumption.* There being a dispute in the evidence as to whether money advanced by plaintiff was a loan or pay-

ment for stock, an instruction which assumed that the transaction was a loan, held erroneous.

21.     *Tort.* In an action in tort instructions which make each defendant unqualifiedly liable for the torts of each of the others held to be reversible error.

22. CONSTITUTIONAL LAW—*Statutes—Title.* Act relating to body judgments held not unconstitutional because the subject is not embraced in the title.

*Error to the District Court of the City and County of Denver, Hon. Samuel W. Johnson, Judge.*

Messrs. DAWSON & WRIGHT, Mr. JAMES J. MCFEELY, for plaintiffs in error.

Mr. HARRY C. RIDDLE, Mr. RICHARD F. RYAN, for defendant in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

THE plaintiff had a verdict and judgment against Erisman, Cunningham and the Silverton Mines Company in an action for deceit by false representations concerning mining property and stock. There was a special finding of fraud and willful deceit and a judgment with order for execution against the bodies of Erisman and Cunningham. The defendants bring error.

1. The sufficiency of the complaint was attacked by demurrer which was overruled. We do not find that any further objection was made, and therefore the error, if any, was waived. *Williams v. Smith,* 76 Colo. 151, 230 Pac. 396; *Stanbury v. Kerr,* 6 Colo. 28. Since, however, the case is reversed on other grounds, we notice the defects in the complaint. The representations alleged in the complaint are as follows: That Cunningham, "while acting in behalf" of the other defendants, represented to plaintiff (a) That the Silverton Mines Company owned and was in possession of a large amount of valuable metal mining

property; (b) that said property carried large deposits of silver, gold and other valuable and precious minerals and metals; (c) that said company was a company organized under the laws of Colorado with a capital of one million shares at one dollar a share; (d) that said stock was, June 18, 1920, selling on the open market at and for the price of one dollar a share; (e) that if plaintiff would deliver to defendant Cunningham, "acting on behalf of" the other defendants, the sum of $10,000 he would issue to plaintiff 20,000 shares of stock in said company as security for the repayment of said sum; (f) that he knew where he could dispose of the said stock at one dollar per share; (g) that out of the proceeds he would have to pay 25 cents per share brokerage and would pay the balance to her.

1. The first cause of action in the complaint alleges that defendant Cunningham, "acting on behalf of" the other defendants, represented that, if plaintiff would deliver to him $10,000, he would execute and deliver to her 20,000 shares of the treasury stock of the defendant, the Silverton Mines Company, as security for the advancement of $10,000 to said company; that all the representations were false and fraudulent; that said stock was never delivered nor any part thereof; that the company was not a corporation, and did not own, and was not in possession by virtue of any title thereto of the mining property represented to belong to it. This is an insufficient statement of the falsity of the representations, with the exception of the ownership of the mines and the incorporation of the company. If it was intended to rely upon the representations of mineral deposits and market value of stock, those representations should have been definitely negatived; the general statement of their falsity shows no damage.

2. It is doubtful whether the representations are sufficiently alleged against any but Cunningham. The proper way to charge representations made by an agent is to allege that the principal made them, and then upon trial prove that the agent made them with the principal's knowl-

edge, consent, or authority. Whether it is sufficient to allege in the complaint that the agent made them with such knowledge, consent, or authority, we need not decide because there is no allegation that any representation was made with the knowledge, consent or authority of the other defendants. The allegation that Cunningham made them in their behalf charges them with nothing.

3. The representation by Cunningham that he would issue and deliver 20,000 shares of stock is a promise and not an actionable misrepresentation. The allegation that he did not deliver amounts to a breach of contract. The first cause of action, therefore, seems to state two causes of action, one in contract and one in tort. They should be separated, but since there was no motion to separate, the plaintiff might recover on either one which he could prove, but not upon both, and the fact that they were confused in the instructions is one of the reasons why this case must be reversed, as we shall see later. Further, in the first cause of action, it would seem that there was a third cause stated, or attempted to be stated, i. e., against the Silverton Mines Company for money lent, but perhaps this was not intended. Nevertheless, the instructions, as we show later, seem to treat the case as if that were one of the causes, and plaintiff's evidence seeks to prove it.

4. The second cause of action alleged the representations set forth in the first, stated them as made on the 15th of September, 1920, and then states that the defendants represented to plaintiff that if she would loan to said defendants and the Silverton Mines Company $3,000 in cash, they would give her the company's thirty day note for that amount with interest at eight per cent; that they did give the note, which is set forth in full, and that the same was endorsed by Cunningham and Erisman, but has never been paid. It calls for twelve per cent after maturity.

The third cause of action sets forth the same representations by Cunningham and a promise to execute a similar note at ten per cent on September 30th (which was

done, and the note is set forth endorsed by Cunningham), and that it has never been paid. It calls for attorney's fees if collected by attorney.

There was no verdict on the fourth cause of action, so we do not notice it.

What we have said with reference to the first cause of action may be said with reference to the second and third, except that in the second it is properly charged that the defendants Erisman and Cunningham made the representations.

With reference to all these causes of action, if it was intended to rely upon tort, the falsity of the statements should have been specifically shown, for example, that the mines contained no value, that the company was insolvent, that the stock was worthless, or whatever falsity was to be relied on and there should have been a statement that by reason of the premises the plaintiff had been damaged in the sum of $————, and the prayer should have been for the recovery of these damages; the prayer, however, is for the recovery of $10,000 with interest thereon from the date of its delivery according to the first cause of action, and for $3,000 with like interest for the second and third causes; this is followed by a prayer for a body judgment. If it was intended to rely upon tort the statements of the contracts are evidential and should not appear in the complaint. They would be relevant and material as evidence to show the way in which the plaintiff had suffered damage. We have said thus much with reference to the complaint because if the case is retried it should be amended.

5. It is claimed that the evidence is insufficient to support the verdicts. There was a separate verdict against each defendant upon each cause of action, nine verdicts in all. The evidence for the plaintiff is that Cunningham represented that the company owned a mine, when, as a matter of fact, it merely had an option or lease and bond on it. The plaintiff testifies that she did not know this until the trial, but it is certain that she did know before

that that the mine was not paid for because when the company, acting through Cunningham, borrowed of her the $3,000 which constitutes the second cause of action, it appears by her own testimony that he told her it was to make a payment upon the property to avoid its loss. So far, therefore, as this first representation is concerned, it has no force except as to the first cause of action, and even as to that there is some evidence that she had information that the $10,000 was to be used as part of the purchase money.

As to the second representation there is no evidence that the mining property did not carry the deposits as represented. As to the third representation; i. e., that the defendant company was a Colorado corporation, it is not shown that any damage resulted to the plaintiff thereby. As to the fourth there is no proof that the stock was not selling as represented. The fifth is a promise. The sixth was a prophecy. The seventh partly an immaterial representation and partly a promise.

It thus appears that the only representation left to support the verdict is that the defendant company owned mines when, in fact, it only had an option; but there is no direct evidence as to whether that option had any value or whether the company was solvent or insolvent at the time the representations were made. Inasmuch as, on the plaintiff's theory of the case, the $10,000 was a loan to the company, if the company was solvent there could be no damage by reason of the false representation that it owned certain valuable mines. If, however, she bought the stock, as she insisted she did not, the fact that the company owned less than was represented would have shown damage. Further, plaintiff herself testifies that before the first $3,000 transaction "I made up my mind I got stung," and came back to Denver from California to investigate. She therefore was not deceived into loaning the sums mentioned in the second and third causes' of action.

6. If the action was in contract there could be no judg-

ment against Cunningham or Erisman on the first cause of action, and no judgment against Erisman on the third, yet the court instructed that they all admitted their indebtedness on the third. And if the first cause of action is for breach of contract to deliver the stock, the breach is disposed of by plaintiff's own evidence that she received and endorsed it and the certificates bear her endorsement.

7. It is claimed that there is no sufficient evidence of false representations by Erisman. We think this point is well taken. There is no evidence that he had any connection with the transaction until after such representations as were made by Cunningham in Texas had been made, and there is no evidence that he ever knew that those representations had been made. There is no evidence that he was present when any representations were made except, perhaps, as to the last $3,000. He was president of the defendant company, acting for that company, but there is no evidence beyond that that he or any officers or trustees of the company knew what representations Cunningham was making. A principal is not bound by the false representations of his agent made without his knowledge, consent or authority, nor an officer of a company by the representations of the company's agent so made. Evidence was admitted that Cunningham repeatedly told the plaintiff and her mother that Erisman was behind him in all he did. This evidence should have been rejected as incompetent against Erisman. For that reason, if for no other, the verdict against Erisman, so far as fraud and willful deceit is concerned, must be set aside. There is a conversation with Erisman long after the whole transaction which is competent against him, but in it he denies in substance any connection with the false statements, though if the evidence of it is believed, perhaps a jury might say he was guilty of consent to the false statement said to have been made when the second $3,000 loan was made.

8. It is claimed that the action is not such that an execution against the body can be issued. We think this claim is correct. It is certainly correct if the action is ex con-

tractu. That it is ex contractu is not certain, but if it cannot be determined whether it is in tort or contract there can be no execution against the body. *Hormann v. Sherin,* 8 S. D. 36, 65 N. W. 424, 59 Am. St. Rep. 744. See also *Fertilizer Co. v. Rudd,* 68 Vt. 607, 35 Atl. 486; *Brown v. Treat,* 1 Hill (N. Y.) 225; *Smith v. Knapp,* 30 N. Y. 581; *Miller v. Scherder,* 2 N. Y. 262; 23 C. J. 912.

The only circumstances under which there can be an execution against the body are, "Where it shall appear from the summons and other papers in the case that the action is founded on tort." C. L. § 5964.

The summons in this case reads as follows: "This is an action brought to recover judgment against said defendants and each of them as follows: For the sum of ten thousand dollars with interest at the rate of eight per cent per annum from the 28th of June, A. D. 1920; Also for the sum of $3020 with interest at the rate of twelve per cent per annum, from the 15th day of October, A. D. 1920; also for the sum of $3,000 with interest at the rate of ten per cent per annum from the 30th day of September, A. D. 1920; together with a further sum of three hundred dollars attorney's fees, provided for by the terms of said note; together with the further sum of $610 with interest at the rate of eight per cent per annum from the 10th day of November, A. D. 1920; the total aggregate of which said principal sums is $16,630.00 with interest thereon at the rates per cent provided in said several contracts as above prayed for; for judgment against the defendants John F. Erisman and Harry G. Cunningham finding them guilty of malice, fraud and willful deceit in committing the tort herein complained of, and that said defendants be, by order of this honorable court duly committed to the common jail of the City and County of Denver for the period of one year or until said judgment is satisfied in full. Plaintiff prays for such other and further relief in the premises as to the court may seem meet and proper, as will more fully appear from the complaint, a copy of which is hereto attached."

There is no escape from the conclusion that this is a summons in an action on contract. There is not a word about damages for false representations or what tort was charged. The statement is that the action is for interest in accordance with the terms of the notes and for attorney's fees, both inconsistent with tort. The statement in the summons for the tort mentioned in the complaint should have been, in substance, that the action was to recover $20,000 (or whatever the sum was) damages for obtaining money from the plaintiff by false and fraudulent representations, or for damages for obtaining money from the plaintiff by deceit. It is doubtful whether the complaint states a cause of action at all, but the sufficiency of the statement ex contractu is less doubtful than the sufficiency of the statement ex delicto. Assuming, however, that there is sufficient for both, and taking the instructions, which are so confused between the two sorts of action that it is impossible to tell which theory the jury is expected to follow, and taking the verdicts as they read, we cannot tell whether the jury were finding a verdict in tort or contract.

In *Platt v. Walker,* 69 Colo. 584, 586-8, 196 Pac. 190, we reversed the case because the court instructed the jury upon two theories of the case and not one alone, it being uncertain upon which the action was brought. This case is more open to this objection than that and while the faulty instructions were not objected to upon that ground, and therefore we cannot reverse the case for them alone, yet we are compelled to take them into consideration in trying to determine what the jury really did in rendering their verdicts. Taking instruction No. 3, for example, it says: "That the defendants admit their *indebtedness* upon the second cause of action in the sum of two thousand dollars, the *balance due on the note* dated September 15, 1920, together with interest thereon at the rate of eight per cent per annum from the 15th day of September to this date. Defendants also admit their *indebtedness* to the plaintiff in the sum of three thousand

.dollars with interest at the rate of eight per cent per annum from the 30th day of September, 1920, to this date."

Here is an instruction to the jury to find for the plaintiffs against all the defendants on these two notes, and the jury could not avoid so finding.

The instruction then goes on: "There are two remaining questions for your determination: (1) Whether the defendants are *indebted* to the plaintiff in the sum of ten thousand dollars as *claimed by plaintiff*, and in case your verdict shall be for plaintiff for this $10,000, you will calculate the interest thereon at the rate of eight per cent per annum from the 28th day of June, 1920, to this present date, said interest to be included in the verdict in case you find for plaintiff."

This all on the theory of contract. Then the instruction goes on: "(2) The other remaining question being whether the defendants in the obtaining of this money were guilty of fraud and willful deceit in obtaining the several sums of money from the plaintiff."

Here the court reverts to the tort theory. Other instructions are equally equivocal.

On the second and third causes of action the several verdicts of the jury, which were rendered separately against each of the defendants, are apparently upon the promissory notes which were given in connection with those transactions, with interest at eight per cent, in strict accordance with instruction No. 3; indeed, they could not be otherwise; and the verdicts upon the first cause of action are apparently upon the indebtedness of $10,000 mentioned in instruction No. 3, with eight per cent per annum. Each of these verdicts against Erisman and Cunningham concludes with the following: "We further find that in committing this tort the defendant Cunningham (or Erisman) was guilty of fraud and willful deceit." It is impossible to tell which theory the jury thought they were following. Under the above cited authorities this necessitates a reversal of the order for capias.

9. The company instead of being a corporation was a trust; that is, its property was held by trustees with powers defined by an instrument which appears in the record. Such an organization is sometimes called a Massachusetts trust because it is in common and familiar use in that state. It seems to be claimed by the plaintiff that this was in a way fraudulent per se; that the representations that it was a company were not supported by the fact that it was such as it was. There is no objection to the use of such an organization nor is it per se fraudulent or deceitful. There is no reason why stock in such an organization should not be as valuable as in a corporation, nor why it should not pay as surely. We see nothing in the evidence to indicate that there was any material misrepresentation on this point. If there was such evidence the question whether it was material to the plaintiff to have stock in or to loan money to a corporation instead of a trust would ordinarily be a matter for the jury and should have been left to them.

10. No objection or exception was made below to the instructions except to Nos. 2 and 2½; of these No. 2 is almost unintelligible, and is also bad because it classes promises with false statements of fact as grounds of action for deceit, but it was not objected to on these grounds. No. 2½ was objected to because misleading. It was so in that it assumes that the $10,000 and the $3,000 transactions were all loans. This was disputed in the evidence as to the ten thousand, the defendants asserting and furnishing evidence to show that it was not a loan but a sale of stock. We do not think that this instruction is cured by any other.

One great objection to the instructions is that they treat the defendants all on the same basis, and if we regard the action as in tort they make each defendant unqualifiedly liable for the torts of each of the others. In this respect they are erroneous and would alone necessitate a reversal if objections on this ground had been made.

11. The defendants claim that the statute, C. L. § 5964, is unconstitutional, so far as its provisions for execution

against the body are concerned, because that subject is not expressed in the title as required by section 21, article V, of the Colorado Constitution. The act, (Gen. Laws 1877, p. 573), is entitled "To repeal sections 67 and 68 of Chapter 50 of the Revised Statutes of Colorado, relating to attachment of the body and issuing executions against the body of a defendant in civil actions, and to enact other provisions in lieu thereof, and to release all persons now under arrest or confined in jails in virtue of such process issued in civil actions." Said sections 67 and 68 relate to attachment and execution in proceedings before a justice of the peace, and the defendants argue that so far as said C. L. § 5964 relates to proceedings before courts of record it is not germane to the title, and that other provisions in lieu thereof can refer only to provisions in relation to capiases from the justice of the peace, and therefore said C. L. § 5964 is not germane to that clause of the title. We think, however, that the expression "in lieu thereof" has a wider meaning than counsel is willing to admit, and that in lieu of these sections referring to justices of the peace, the legislature may enact a section referring not only to them but to courts, so long as it is germane to executions against the body. If, however, that were not true, the defendants' argument defeats itself, because the first section of the act entitled as above, Gen. Laws, p. 573, is as follows: "Sections 67 and 68 of chapter 50 and sections 6 and 7, of chapter 48 of the revised statutes of Colorado, be and the same are, hereby repealed."

Said sections 6 and 7 provide for execution against the body of any defendant where judgment shall have been obtained for a tort or a trespass committed by such defendant. If counsel for defendants' argument were sound these sections 6 and 7 would still be unrepealed, and a common law capias would be due against their clients. We do not agree that the provision for release of all civil prisoners amounts to a repeal of those sections.

The judgment must be reversed with directions to amend the pleadings and proceed in accordance with this opinion.

*On Rehearing.*

MR. JUSTICE DENISON. The petition for rehearing quotes from the opinion the following: "A principal is not bound by the false representation of his agent made without his knowledge, consent or authority, nor an officer of the company by the representations of the company's agent so made," and says that Cunningham was not an agent, but an officer of the company and claims that the company is bound by the representations of its officer, if it accepts the fruits thereof.

The quotation above refers to Erisman and not to the company.

Rehearing denied.