498 P.2d 1183 (1972)
Dwain L. SCHUETTE, Plaintiff-Appellant,
Edwin J. Schomaker, Plaintiff,
v.
David R. WINTERNITZ, Defendant-Appellee,
Charles Homer Cranford, Defendant.
No. 71-274.
Colorado Court of Appeals, Div. I.
July 5, 1972.
*1184 Evans, Peterson & Torbet, Paul V. Evans, Colorado Springs, for plaintiff-appellant.
Kane, Donley & Wills, Lee R. Wills, Colorado Springs, for defendant-appellee.
Not Selected for Official Publication.
PIERCE, Judge.
Early in 1967, defendant Cranford discussed with defendant Winternitz the production and sale of a new type of weight-reducing machine. Cranford had several complete machines and some component parts with him at the time. He stated that he possessed trade secrets in connection with their production and was already in the business of producing and selling them elsewhere, and displayed a purported receipt issued by a warehouse in Texas for 155 of these machines. He further related to Winternitz that he had plans for a more sophisticated machine.
Winternitz, a physician, conducted an experiment with one of the machines and became convinced that the device was effective as a weight reducer of the human body.
After some negotiation, defendants entered into an agreement whereby Winternitz paid Cranford $5,000 for a one-half interest in the business and Cranford was to sell fractions of the business which would reduce each of their interests equally. Proceeds from the sale of these fractional interests were to be divided equally between them. Further, the agreement contemplated the ultimate formation of a corporation to sell the machines on hand and to manufacture and sell additional machines.
Cranford thereafter persuaded each plaintiff to invest $10,000 for a one-sixth interest in the existing machines and future business and promised them salaried positions in the production end of the business after the corporation was formed. Both plaintiffs were shown the warehouse receipt by Cranford and both knew, prior to purchase, that Winternitz owned a one-half interest in the machines and proposed business.
Schomaker paid his $10,000 by a $5,000 note payable to Cranford only and $5,000 in cash. $500 of the cash was eventually received by Winternitz. Schomaker subsequently defaulted on the note, and Winternitz paid a resulting judgment to the then holder. Winternitz never received any portion of the monies paid by Schuette.
The four parties met, hired an attorney, proceeded to have articles of incorporation prepared, and received a certificate of incorporation from the Secretary of State of Colorado, dated October 30, 1967. They all signed as incorporators and all four were named to the first board of directors. The evidence indicates that they were all participating in the decisions made at this point in time. Nothing further was done toward placing the corporation on an operational basis and it was allowed to become defunct.
In 1968, when they suspected that the warehouse receipt was fraudulent and that Cranford had no intention of carrying out the proposed business plan, Schomaker and Schuette filed suit against Cranford and Winternitz. Their claims against Cranford were based on fraud. The essence of their claim against Winternitz was in contract based on failure of consideration or unjust enrichment. No claim of fraud was made against Winternitz. Default judgment was entered against Cranford but, after a full hearing, the court dismissed the claims against Winternitz. Schuette alone appeals.

*1185 I.
Schuette first contends, and the trial court so found, that Cranford was Winternitz' agent for the sale of the machines. This finding is supported by the evidence to the extent that, in selling an interest to Schuette, Cranford acted on behalf of Winternitz and subject to Winternitz' approval. Schuette argues that Winternitz should therefore be held liable as a principal. We do not agree.
An agent who enters into a contract on behalf of a disclosed principal binds that principal to the terms of the contract. However, a principal is not bound by the false representations of his agent made without his knowledge, consent or authority and without ratification by him after receipt of a benefit. Erisman v. McCarty, 77 Colo. 289, 236 P. 777. Indeed, where the agent has perpetrated a fraud to induce the contract, the only remedy against the principal is rescission and restitution. Meredith v. Ramsdell, 152 Colo. 548, 384 P.2d 941. It was established by the evidence, and the trial court found, that Winternitz never received any monies or other consideration from Schuette. Thus, under this theory, Schuette's only remedy is an action for damages against Cranford.

II.
Schuette's other contention is that the trial court erred in failing to find that Winternitz and Cranford were partners, or at least co-promoters, with a fiduciary duty owed to plaintiffs. See 1 W. Fletcher, Cyclopedia of the Law of Corporations § 192. He contends that, if they were partners or co-promoters, Winternitz would be liable on the contract even though Cranford was the only one guilty of fraud.
The trial court found, however, that all the parties were co-promoters of this business and, as such, shared equally in the losses. Buchhalter v. Myers, 85 Colo. 419, 276 P. 972, defines promoters as "persons who bring about the incorporation and organization of a corporation." All the parties here come generally within this definition and we accept the trial court's characterization. Thus, the question presented is whether the court correctly assessed the rights and duties as among co-promoters.
The law varies greatly, from jurisdiction to jurisdiction, as to whether co-promoters stand in the relationship of principal and agent, joint adventurers, or in some trust relationship. See 1 H. Oleck Modern Corporation Law § 38; 1 W. Fletcher Cyclopedia of the Law of Corporations § 191. None of these characterizations adequately cover the multiplicity of problems that arise regarding the unique relationships between promoters. A clear rationale can be gleaned from the decided cases. Promoters are dealt with in whatever category seems most applicable to the particular facts presented.
The relationships among promoters are not such as can be readily classified or categorized, but their rights and duties as among themselves should be based on the particular contractual relationship entered into by them, their common goals, their specific function within the group of promoters, and their relative knowledge and contribution to the total scheme. See H. Oleck, supra. Their rights and duties should then be determined according to the equities presented, taking into account whether they are all on equal footing as co-promoters, whether some are partners and some are agents, or whether some other actual relationship exists among them. Such a determination becomes basically a question of fact. Where, as here, the trial court's conclusion that Schomaker, Schuette, and Winternitz were co-promoters in substantially equal positions is a finding of fact supported by the evidence, it will be affirmed. Daley v. Jackson, 226 Ore. 471, 360 P.2d 542.
Each party knew they were all responsible for getting the business started and that incorporation was a prerequisite to the beginning of the business. Therefore, it was not error to find that they were co-promoters. Further, we agree with the *1186 trial court's conclusion that "the plaintiffs and Winternitz were all three innocent victims of Cranford and that no facts have been shown by plaintiffs which could justify this court in imposing upon Winternitz all of the losses the three have suffered."
Judgment affirmed.
SILVERSTEIN, C. J., and SMITH, J, concur.