Nick MONTOYA and Aver Montoya, Plaintiff–Appellee and Cross–Appellant,

v.

GREASE MONKEY HOLDING CORPORATION and Grease Monkey International, Inc., Defendants–Appellants and Cross–Appellees.

No. 92CA1585.

Colorado Court of Appeals, Div. III.

Jan. 13, 1994.

As Modified on Denial of Rehearing March 10, 1994.*

Certiorari Granted Nov. 7, 1994.

Cross–Petition for Certiorari Denied Nov. 7, 1994.

---

* Metzger, J., would deny in part and grant in part.

Teresa A. Zoltanski, Denver, for plaintiff-appellee and cross-appellant.

Hopper and Kanouff, P.C., Dennis A. Graham, Victor M. Morales, Denver, for defendants-appellants and cross-appellees.

Schaden, Lampert & Lampert, Susanna Meissner–Cutler, Brian J. Lampert, Denver, for amicus curiae Colorado Trial Lawyers Ass'n.

Opinion by Judge PLANK.

Defendants, Grease Monkey Holding Corporation and Grease Monkey International, Inc. (collectively Grease Monkey), appeal the judgment entered in favor of plaintiffs, Nick and Aver Montoya, on their claims of fraud and misrepresentation. Plaintiffs cross-appeal the trial court's holding that defendants were not liable for treble damages under § 18–4–405, C.R.S. (1993 Cum.Supp.). We affirm.

Arthur P. Sensenig acted as Chairman of the Board, President, and Chief Operating Officer of Grease Monkey from 1983 to 1991. During that time, Sensenig secured loans from plaintiffs under the guise that the funds were "investments" in Grease Monkey, a growing corporate franchisor. In fact, none of these loans was invested in Grease Monkey. Rather, Sensenig used plaintiffs' money for his personal benefit.

For each of the loans made by plaintiffs, plaintiffs wrote checks payable to "Arthur P. Sensenig," based on Sensenig's representation that because Grease Monkey was a new company, it did not have its own account, and as President and Chairman, Sensenig used his own account as the corporate account. Sensenig executed promissory notes to evidence the loans made by plaintiffs.

Sensenig defaulted on the loans made by plaintiffs. Plaintiffs have not been repaid the principal amounts of these loans, nor have they received full payment of the interest due on the notes.

Plaintiffs brought this action against Grease Monkey, as Sensenig's employer, for various contract claims, breach of implied contract, fraud, misrepresentation, treble damages pursuant to § 18–4–405, C.R.S., (1986 Repl.Vol. 8B), breach of duty of good faith and fair dealing, promissory/equitable estoppel, extreme and outrageous conduct, and negligent hiring retention and supervision. After trial to the court, plaintiffs prevailed on their fraud and misrepresentation

claims, and their other claims were dismissed.

## I.

Grease Monkey first contends that the trial court erred in applying Restatement (Second) of Agency § 261 (1958) to find it liable for payment of the debt owed to plaintiffs by Sensenig. It contends the trial court's reliance on this section was unsupported by existing Colorado law and, therefore, must be reversed. We disagree.

Restatement (Second) of Agency § 261 states:

A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.

According to Restatement (Second) of Agency § 261 comment a, a principal may be liable under this rule even though the principal had no knowledge of the fraud, did not authorize the fraud, and did not receive any benefit from the transaction. See also Richards v. Attorney Title Guaranty Fund, Inc., 866 F.2d 1570 (10th Cir.), cert. denied, 491 U.S. 906, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989); Kerbs v. Fall River Industries, Inc., 502 F.2d 731 (10th Cir.1974).

Although this section of the Restatement of Agency has not been adopted expressly by our supreme court, Colorado case law leads us to conclude that its application was appropriate here.

In Colorado, a principal may not be bound by the false representations of his agent made without his knowledge, consent, or authority. Erisman v. McCarty, 77 Colo. 289, 236 P. 777 (1925). However, an exception to this rule exists if an agent has apparent authority to make the representation at issue.

Whether such apparent authority existed is a question of fact, and the trial court's determination of this issue is binding if supported by sufficient competent evidence. Heatherridge Management Co. v. Benson, 192 Colo. 190, 558 P.2d 435 (1976).

In addition, a principal may be held liable for the torts of an agent if the tortious conduct was within the scope of the agent's authority. McDonald v. Lakewood Country Club, 170 Colo. 355, 461 P.2d 437 (1969). An agent is acting within the scope of employment if he is doing what is necessarily incidental to the work that has been assigned to him or which is customarily within the business in which the employee is engaged. Dyer v. Johnson, 757 P.2d 178 (Colo.App. 1988).

Here, the trial court found that Sensenig, as general agent and president of the defendant corporations, had apparent authority to raise capital, up to $500,000, from banks and other lenders without authorization from the board of directors. These findings are supported by the record and will not be disturbed on appeal. See Heatherridge Management Co. v. Benson, supra.

Further, the trial court found that Sensenig consistently reported to plaintiffs the progress and growth of Grease Monkey; that plaintiffs received Grease Monkey annual reports throughout their investment period; that plaintiffs received a number of Grease Monkey promotional items; that on many occasions Sensenig mailed plaintiffs information about their investments on Grease Monkey letterhead; that plaintiffs frequently contacted Sensenig at the Grease Monkey offices; and that Sensenig gave plaintiffs stock certificates upon which Sensenig's signature appeared as president of the corporation. In sum, the evidence in the record supports the trial court's conclusion that in plaintiffs' view, Sensenig was "Mr. Grease Monkey."

We conclude the trial court properly held Grease Monkey liable to plaintiffs because, Sensenig, as its president, acting within the scope of his apparent authority as an agent of the corporations, engaged in conduct which was customary for an individual employed in Sensenig's position, and was placed in that position by Grease Monkey. See Dyer v. Johnson, supra.

Given the circumstances of this case and existing Colorado case law, we adopt Restatement (Second) of Agency § 261 as re-

flecting Colorado law and conclude that the trial court did not err in applying it here.

## II.

Grease Monkey also asserts the trial court erred in adopting the equitable principle of restitution as a remedy in this case. We agree that the application of restitution principles was improper; however, its application does not affect the outcome here.

■ Restitution is a measure of damages which restores a party to his/her prior status. It is available as a remedy when the injured party is due reimbursement for a benefit conferred upon another. *See* Restatement of Restitution § 1 (1937); *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986).

■ Here, the trial court found in plaintiffs' favor on their claims of fraud and misrepresentation. On its own accord, trial court chose restitution as the measure of damages. It reasoned, pursuant to *Schuette v. Winternitz,* 498 P.2d 1183 (Colo.App.1972) (not selected for official publication), that because the plaintiffs were fraudulently induced into entering the loan contracts, the appropriate remedy was to "put the parties back to the status quo ante, by rescinding the agreements and giving restitution to the Montoyas." The judgment awarded to the plaintiffs under this theory of recovery was $230,000 plus interest.

Grease Monkey argues that using restitution as a measure of damages was erroneous because it did not benefit whatsoever from the fraudulent acts of Sensenig. We agree with defendants that the application of restitution principles was inappropriate. However, the amount owed by defendants would not change had the trial court employed the proper measure of damages.

The proper measure of damages for procuring a loan through fraud is the total amount of the loan, plus interest. *Black v. First Federal Savings & Loan,* 830 P.2d 1103 (Colo.App.1992). Here, the trial court determined that $230,000 was the total amount of the fraudulently acquired loans, plus interest.

## III.

Grease Monkey next argues the trial court erred in not apportioning liability between it and settling defendants pursuant to § 13–21–111.5 and § 13–21–111.6 (1987 Repl.Vol. 6A). We disagree.

### A.

■ Section 13–21–111.5 provides for, in tort litigation, the apportionment of fault severally among the parties and the designated non-parties. After apportionment, a defendant is liable only for the percentage of plaintiff's damages which represents the amount of fault attributable to the defendant.

The finder of fact may not consider the negligence or fault of a nonparty unless such issue has been properly raised by the defendant in a pleading which complies with § 13–21–111.5(3), C.R.S. (1987 Repl.Vol. 6A). *Thompson v. Colorado & Eastern R.R. Co.,* 852 P.2d 1328 (Colo.App.1992).

Here, Arthur and Edith Sensenig were originally named defendants in the suit and settled with plaintiffs in January 1992. Co-defendant John Holzman also entered into a settlement agreement with plaintiffs immediately prior to trial, which occurred in May 1992.

We agree that Grease Monkey could not have designated the Sensenigs or Holzman within 90 days from the commencement of the action. At that time, these individuals were co-defendants. However, once these parties entered into settlement agreements with the plaintiffs, Grease Monkey's trial counsel should have invoked the provisions of § 13–21–111.5, alerting the court that the proportionate fault of these individuals would be an issue when the judgment was rendered. In this regard, the record reflects that Grease Monkey had knowledge of the Sensenigs' settlements in February 1992, at the latest.

Instead, Grease Monkey waited until after the trial court entered the judgment to invoke the provisions of § 13–21–111.5. In our view, the language of this statute does not accommodate post-trial motions to apportion fault among defendants and non-parties. Ac-

cordingly, we hold that Grease Monkey does not have rights under § 13–21–111.5.

### B.

The parties do not raise, nor do we address, the issue of whether Grease Monkey has a right of contribution under § 13–50.5–105, C.R.S. (1987 Repl.Vol. 6A).

### C.

■ Grease Monkey also contends the trial court erred in not applying § 13–21–111.6, C.R.S. (1987 Repl.Vol. 6A) to reduce the amount of the judgment against it. Again, we disagree and find this statutory provision inapplicable to this case.

Section 13–21–111.6, C.R.S. (1987 Repl.Vol. 6A) requires the court to reduce a damage award by the amount a plaintiff is "compensated for his loss by any other person, corporation, insurance company, or fund." This provision was enacted in order to restrict the scope of the "collateral source" rule and curtail its "double recovery" effect. *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070 (Colo.1992).

Under the common law collateral source rule, if an injured party received compensation from a collateral source, the damages recoverable from the tortfeasor could not be reduced by that amount. A collateral source is one that is "wholly independent of the wrongdoer." *Kistler v. Halsey,* 173 Colo. 540, 545, 481 P.2d 722, 724 (1971).

In *United States Fidelity & Guaranty Co. v. Salida Gas Service,* 793 P.2d 602 (Colo. App.1989), § 13–21–111.6 was construed to include compensation from tortfeasors as well as sources independent of the tort.

In addition, Grease Monkey relies in oral argument on this court's opinion in *Smith v. Zufelt,* 856 P.2d 8 (Colo.App.1992) (*cert. granted* July 26, 1993) in support of the argument that § 13–21–111.6 requires the judgment to be set off by the settlement amounts owed by the Sensenigs and Holzman. In *Smith v. Zufelt, supra,* a division of this court held that payments made by settling tortfeasors in excess of their proportionate fault are collateral source payments.

On re-evaluation, we disagree with *Smith v. Zufelt, supra* and adopt the reasoning of the special concurrence in *Simon v. Coppola,* 876 P.2d 10 (Colo.App.1993). We conclude that a collateral source payment comes from a source independent of the tortfeasor.

The special concurring opinion in *Simon* reasoned that § 13–21–111.6, in light of its historical context, applies to payments from a collateral source independent of any alleged tort liability. We agree with that analysis, and accordingly, since the Sensenigs and Holzman are tortfeasors, and not collateral sources, we find § 13–21–111.6 is inapplicable to this case.

### IV.

■ Finally, we address plaintiffs' contention that the trial court erred in not assessing treble damages pursuant to § 18–4–405, C.R.S. (1993 Cum.Supp.). We are not persuaded.

Section 18–4–405 states:

All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale ... shall divest the owner of his right to such property. The owner may maintain an action not only against *the taker thereof but also against any person in whose possession he finds the property.* In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater.... (emphasis added)

Here, the express language of the statute provides recovery from the "taker" of the property as well as from the "person in whose possession [the victim] finds the property." Here, the facts indicate that Sensenig, not Grease Monkey, was the "taker" of the property. Additionally, Grease Monkey does not currently, nor did it ever, possess the funds fraudulently obtained by Sensenig.

Furthermore, our supreme court has interpreted that due to its placement in the criminal code, this section was intended to be a punitive measure depriving thieves and persons who buy and sell stolen goods of the immediate fruits of their criminal activities.

*In re Marriage of Allen,* 724 P.2d 651 (Colo. 1986).

Here, Grease Monkey does not fit into the category of thieves or persons who buy and sell stolen property which the statute aspires to punish. Therefore, we decline to apply § 18–4–405, C.R.S. against Grease Monkey because punishing the actions of Grease Monkey in this context does not serve the purposes of the statute.

Judgment affirmed.

HUME, J., concurs.

METZGER, J., concurs in part and dissents in part.

Judge METZGER concurring in part and dissenting in part.

For the reasons stated in *U.S. Fidelity & Guaranty Co. v. Salida Gas Service Co.,* 793 P.2d 602 (Colo.App.1989) and in my dissenting opinion in *Simon v. Coppola,* 876 P.2d 10 (Colo.App.1993), I respectfully dissent from Part III(C) of the majority's opinion. In all other respects, I concur.