## No. 16,771.

GINSBERG ET AL. *v.* ZAGAR.
(251 P. [2d] 1080)

Decided December 15, 1952.

Mr. Isaac Mellman, Mr. E. Clifford Heald, Mr. Leon Ginsberg, Mr. Victor B. Ginsberg, for plaintiffs in error.

No appearance for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

We will herein refer to the parties by name or as they appeared in the trial court, where plaintiffs in error were defendants and defendant in error was plaintiff.

Plaintiff brought the action to recover damages allegedly sustained by her in connection with the purchase of residence property in the City and County of Denver, which she claims was induced by false and fraudulent representation made by defendants. The case was tried to the court without a jury and resulted in the entry of judgment in favor of plaintiff and against defendants in the sum of $1,200.00 and costs. Defendants, seeking a reversal of this judgment, bring the case here by writ of error.

Plaintiff in her complaint alleged, in substance, that defendants entered into a conspiracy to finance and construct by unlawful means and in an unlawful manner, and to sell by fraudulent misrepresentation, residence properties in the City and County of Denver, and that, pursuant to said alleged conspiracy, defendants did erect a number of houses in Denver, including the residence commonly described as 955 Glencoe street which was purchased by plaintiff. Paragraph 5 of plaintiff's complaint reads as follows:

"That pursuant to said conspiracy and agreements between the defendants, the said defendants, E. Clifford

Heald, Bradley Heald, and Louise B. Heald, represented to the plaintiff on and prior to November 16, 1947, that they were the owners of the said house at 955 Glencoe Street, Denver, Colorado, and that the said house had been completed as a new home, and that said home had been built in accordance with the Building Codes of the City and County of Denver and in accordance with specifications approved by the Veterans Administration and the Federal Housing Administration, and of first-class workmanship and material, and that the house was habitable, new and complete and constructed in a fashion suitable for occupancy and use in perfect first-class condition, and would remain so."

It further was alleged in the complaint that the said home ostensibly complied with the description represented by said defendants; that plaintiff had no knowledge of house construction, and was unskilled in judging the quality thereof, or of materials and workmanship used and employed in the erection of the residence; that the defects were latent and hidden and could not be discovered by inspection; and that the falsity of the representations of defendants could not have been ascertained by the exercise of reasonable care on the part of plaintiff. Plaintiff alleged that the representations of defendants were untrue in that:

"(1) The house had been constructed of second-hand, below-grade and below-standard materials, and by the use of unskilled workmanship, specifying the use of such unskilled workmanship and/or defective materials in the roofing, hardware and locks, screens, floors, walls and ceiling joists, interior carpentry, paint and painting operations, plastering, and the installation and bracing of door frames and window frames.

"(2) The structural lumber was not of the quality required by specifications approved by the Veterans Administration, or of the quality required by the Building Code.

"(3) Despite the fact that *ground water had been en-*

*countered* above the basement floor, the basement *walls* had not been waterproofed in the manner the City Building Code required.

"(4) Despite the fact that *ground water had been encountered* above the basement floor, the basement *floor* had not been waterproofed in the manner, or constructed of the materials or in the thickness, required by the City Building Code.

"(5) By reason of such faulty construction, the house was and has remained non-habitable."

Defendants answered, denying generally the allegations of the complaint, admitting, however, that plaintiff purchased the property.

The evidence discloses, without dispute, that prior to February 1, 1946, defendants Ginsberg and E. Clifford Heald owned forty lots. On that date they entered into a written contract under which they agreed to sell to Bradley Heald all of said lots. George Judd, a contractor, also was a party to the contract and he agreed to erect twenty houses upon the lots. It was further provided in the contract that the houses should be sold when completed at a sum not to exceed ceiling prices applicable at the time of sale; that out of the proceeds of sale the contractor should be reimbursed for the cost of erecting the houses and should receive, in addition, one-half the difference between the cost (not to exceed a specified maximum amount) of erecting, financing and selling the houses, and the proceeds of the sale thereof; that Bradley Heald, the buyer, was to retain certain sums over and above the payments to Judd; and that the balance remaining was to be paid to Ginsberg and E. Clifford Heald as the purchase price of said lots.

The house purchased by plaintiff was one built pursuant to the above contract. The contractor, Judd, commenced construction of the twenty houses and carried on until June 14, 1946, when he was discharged by Bradley Heald, and another contractor, Gregg, was employed to complete the buildings; he was a defendant in the

trial court, but the action as to him was dismissed upon the trial.

Plaintiff entered into a written contract to purchase the house in question on November 16, 1947. December 8th, 1947, she received a deed of conveyance thereto and paid the full price of the property, except the sum of $130.00 which she retained to insure installation of screens and seeding of a lawn. She moved into the premises about December 15, 1947, and occupied the house until July, 1948, when she went to Boulder, Colorado, to live with her son who was a student at the University of Colorado. During this absence she rented the house for $155.00 per month. She again lived in the house from April, 1949, to December, 1950. From the last mentioned date until March, 1951, it was again rented, and thereafter, until the time of trial, plaintiff occupied the house.

Plaintiff testified that about the last of March, 1948, the basement floor cracked and water came up out of the cracks; that every time she watered the lawn, or when it rained, the water would come in; that the floor "heaved up" in the middle, about four inches, and when this happened the ceiling in the living room on the first floor cracked clear across, and cracks also appeared in several other rooms. The record established conclusively that the basement floor was in the condition to which plaintiff testified, and that water, in greater or less quantity, depending on the season, has been present thereafter in the basement of said premises until the time of trial in April 1951. It equally is clear that the cause of the cracking of the basement floor, and the upheaval thereof, is the hydrostatic pressure of ground water.

The reporter's transcript of testimony contains 430 pages, much of which has no relation to the issues framed by the pleadings. We have not had the benefit of any appearance of counsel in this court on behalf of the plaintiff.

At the conclusion of a long trial the court stated:

"Plaintiff bought a house in Denver and paid $12,-800.00 for it. Prior to the purchase she was told by some of the defendants that the house she was buying was habitable and livable, and, specifically, that it had been constructed so that the basement was dry and would remain so. The evidence is not in conflict that the house was not built to be habitable, is not habitable now, and the basement is anything but dry.

"Long prior to the purchase of the house by the plaintiff some of the defendants acquired title to the lots upon which this house and other houses were built, and at the time the lots were acquired the defendants knew that they were not the type of lots upon which houses could be built without special precautions, because of the water hazard.

"The evidence before the court is that some of the lots were purchased for as low as $20.00 per lot. The court will take judicial notice of the fact that these lots are in a generally good residential district of Denver. Good homes surround the area upon which these houses were built. Defendants bought the lots with knowledge that there was something wrong with them as building sites because of the water conditions, and that, I think, is the gist of the conspiracy which has been established here.

"I could comment at some length on some features of the evidence and some other features of the case, but in my judgment plaintiff is entitled to a judgment against all of the defendants, except the defendant Gregg. As to the defendant Gregg, I find the issues joined in his favor and the case as to the defendant E. F. Gregg, is dismissed."

The trial court entered written findings and order for judgment, but the only pertinent statement contained therein relating to the facts as found by it was: "The Court also finds the issues herein in favor of the plaintiff, Amelia V. Zagar, and against the defendants, Brad-

ley Heald, E. Clifford Heald, Louise B. Heald, and Victor B. Ginsberg, in the sum of Twelve Hundred Dollars ($1200.00), and costs."

Careful analysis of the complaint leads to the conclusion that the only misrepresentations which are sufficiently alleged to have been made are the following:

1. The alleged representation that the house "had been built in accordance with the Building Codes of the City and County of Denver." 2. That it had been built according to specifications approved by the Veterans Administration. 3. That it had been built "of first-class workmanship and material." 4. That is "was habitable, new and complete and constructed in a fashion suitable for occupancy and use in perfect first-class condition * * *."

Defendants' counsel specify twenty points upon which they rely for reversal. These are presented under nine separate headings in their brief. We find it unnecessary to consider all of the points argued. With reference to the four allegations of misrepresentation hereinabove stated, it is argued by counsel for defendants: (1) That the proof failed to show the falsity of the first representation; (2) that there was no evidence to establish either the making of the second representation or the falsity thereof; (3) that there was no proof establishing the falsity of the third representation; and (4) that there was no evidence proving either the making of the alleged fourth representation of the pleaded falsity thereof.

Question to be Determined.

*Does the record in this cause contain competent evidence sufficient in law to establish the essential facts which must be present to sustain a judgment based upon specific fraudulent representations to wit: that defendants knowingly made one or more of the material false representations alleged in the complaint; that defendants intended that said representations would be acted*

*upon; and that plaintiff relied and acted thereon to her damage?*

As to each defendant, the question is answered in the negative. In actions of this kind the law requires particularity in the allegations of the complaint, and the proof must be relevant to the issues framed by the pleadings. Adoption of the Rules of Civil Procedure did not change the essential elements of a complaint in this type of action. *Shultz v. Manufacturers & Traders Trust Co.,* 1 F.R.D. 53; *Producers Releasing Corp. De Cuba v. Pathe Industries,* 10 F.R.D. 29. Rule 9 (b) R.C.P. Colo., expressly provides, inter alia: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The "particularity" thus required is that which in numerous decisions we have defined in actions for fraud and deceit, prior to the adoption of our Rules of Civil Procedure. Among the many decisions in which are stated these essentials are, *Brown v. Linn,* 50 Colo. 443, 115 Pac. 906; *Kilpatrick v. Miller,* 55 Colo. 419, 135 Pac. 780; and *Morrison, Admix. v. Goodspeed,* 100 Colo. 470, 68 P. (2d) 458.

In *Erisman v. McCarty,* 77 Colo. 289, 236 Pac. 777, we held that, where a plaintiff alleges that specific material representations were made by a defendant, it is insufficient merely to characterize them as false, but such plaintiff must set forth the falsity thereof by direct and particular allegation of the true facts, demonstrating thereby that the representations are untrue. 24 American Jurisprudence, page 76, section 246.

No contention is made that the judgment of the trial court is justified upon issues not framed by the pleadings, concerning which evidence was admitted without objection. The judgment accordingly must stand or fall upon the law applicable to the specific issues raised by the pleadings.

With respect to the alleged representation that the house had been built in accordance with the Build-

ing Code of the City and County of Denver, defendants admit that sufficient proof is present to establish that this representation was made. It is contended, however, that plaintiff failed to establish by any evidence that the quality of the structural lumber, or the construction and waterproofing of the basement, did not meet the code requirements. These were the only respects in which plaintiff alleged failure to comply with the code. In this contention counsel for defendants is correct. There is no evidence whatever that the construction did not comply with the municipal code in these particulars, nor in any other manner. All the evidence tended to establish compliance.

■ As to the alleged representation that the house had been built according to specifications approved by the Veterans Administration, suffice it to say that there was no evidence which tended to prove that the specific representation ever was made by any of the defendants. There was evidence tending to prove that one of the defendants stated to plaintiff that construction complied with "specifications" and there was proof that there were specifications, but there was no evidence relating to approval of specifications by the Veterans Administration. The only allegation of lack of conformity to specifications was that the structural lumber was of inferior quality. The "specifications" covering the house were introduced in evidence, but there was not one word of testimony tending to prove the alleged lack of conformity therewith.

■ With respect to the third alleged representation, plaintiff established that one of the defendants stated that the house was well built. Assuming that this evidence tends to prove the making of a representation that the house had been built of "first-class workmanship and materials," there was a total failure to prove that is was constructed of secondhand, below grade below standard material, and by unskilled workmen. These were the allegations of the complaint intended to

set forth the true situation as contended by plaintiff to establish the falsity of the representation. All the evidence was to the effect that proper materials and skilled workmen were employed.

■ With respect to the fourth alleged representation, there is a total failure by plaintiff to establish the making by any defendant of the pleaded representation. No defendant stated, on plaintiff's own evidence, that the house was "habitable, new and complete and constructed in a fashion suitable for occupancy and use in perfect first-class condition." Nor did any defendant make a representation of similar import. The plaintiff, to establish the falsity of this alleged representation, charged in her complaint that it was false because substandard and defective materials were used in the construction; unskilled workmanship went into the building; structural lumber was of inferior quality; and despite the fact that ground water had been encountered above the basement floor, the basement walls and floor were not waterproofed as required by the building code of Denver. No evidence appears in the record tending to establish any of these charges. All the evidence is to the contrary.

The unfortunate situation in which plaintiff finds herself is that the damage of which she complains is the result of a condition which developed and made its appearance subsequent to the completion of construction, and results, not from any defect in construction, but from other causes not known to exist at the time she bought the property.

For the reason hereinabove set forth, the judgment is reversed, and the cause remanded with direction to dismiss the action. In this case we consider it fair and equitable to order that each party shall pay their own costs; accordingly, it is so ordered.

MR. JUSTICE CLARK not participating.