No. 19,484.

BELL PRESS, INC., ET AL. *v.* GIFFORD PHILLIPS.

(364 P. [2d] 398)

Decided August 21, 1961.   Rehearing denied September 11, 1961.

Mr. GRAHAM SUSMAN, Mr. HYMAN D. LANDY, for plaintiffs in error.

Messrs. TULL, HAYS & THOMPSON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

WE will refer to the parties by name, or as they appeared in the trial court, where Gifford Phillips was the plaintiff and Bell Press, Inc., and Allen Bell were defendants.

The present controversy has its origin in the purchase of the Golden Press, Inc., a corporation, by Bell Press, Inc., also a corporation, and Allen Bell. Prior to December 31, 1956, Golden Press and Bell Press were both in the printing business, with Gifford Phillips being the principal stockholder in the former company and Allen Bell in the latter. Phillips was also the president of Golden Press, but inasmuch as he resided in California he had little to do with the day-to-day operation of the business. Rather, one Harry Schnibbe, a vice-president of Golden Press and also its general manager, was in actual charge of its daily operation.

In 1956 Gifford Phillips determined to get out of the printing business and it became known that Golden Press was "for sale." Schnibbe and Bell had intermittent but recurring conversations about the possibility of the two firms merging, or, in the alternative, the outright purchase of Golden Press by Bell Press. These conversations took place during the fall of 1956, but no understanding was reached until the latter part of December of that year, when after hurried last-minute negotiations, Bell Press and Allen Bell submitted a written offer to purchase which was accepted in writing, by Gifford Phillips for Golden Press, on December 22, 1956, the sale to be effective on December 31, 1956.

In essence, the purchase and sale agreement provided that Bell Press would take over all the assets and liabili-

ties of Golden Press and pay Golden Press the additional sum of $15,000, to be evidenced by a promissory note in that amount. Accordingly, on December 31, 1956, Bell Press and Allen Bell, individually, executed their promissory note in which they jointly promised to pay Golden Press the sum of $15,000 at the rate of at least $500 per month, commencing January 1, 1958, with interest. On July 25, 1957, this note was assigned by Golden Press to Gifford Phillips "in partial payment of the debt owed by Golden Press, Inc., to Gifford Phillips, in accordance with, and in execution of the plan of liquidation of Golden Press, Inc."

On May 1, 1958, Gifford Phillips brought the present action based on this promissory note against Bell Press, and Allen Bell, alleging that none of the payments called for by the note had been made and demanded judgment against defendants jointly for $15,000 and interest. Defendants denied owing $15,000 and interposed a counterclaim or set-off based on their contention that Golden Press had misrepresented the value of certain assets which had been transferred to Bell Press as a part of the transaction.

It was agreed upon trial that Phillips was not a good faith purchaser for value and therefore took the note subject to all the defenses and set-offs that Bell Press and Allen Bell could interpose against the original payee, Golden Press. Trial to the court resulted in a judgment for Phillips against both defendants for $9,103.75 plus interest. The difference between the amount of the judgment and the amount prayed for in the complaint, namely $5,896.25, represents certain "adjustments" allowed by the trial court. Phillips does not assign error based on this downward adjustment from the face value of the note. Rather, by the present writ of error Bell Press and Allen Bell seek reversal of the judgment of the trial court for its failure to allow defendants' counterclaim or set-off for the *additional* amount of $6,755.17.

This additional amount of $6,755.17 is claimed by these

defendants on the grounds that the representatives of Golden Press fraudulently represented the "collectibility" of certain of their accounts receivable. In connection therewith defendants alleged that Golden Press by and through its agents, represented that all of the accounts receivable constituting a part of the assets of the corporation and amounting to $22,209.47 were current, collectible accounts; that defendants relied on such representation which was known by the agents of Golden Press to be false and untrue and which had been made for the purpose of inducing the defendants to purchase said business and with the intent that the defendants should rely thereon; that in fact certain of the accounts receivable were not current nor collectible and that defendants were in fact unable to collect $6,755.17. Accordingly, defendants claimed the right to a set-off in the amount of $6,755.17. Plaintiff by reply denied these allegations.

Upon trial after all the evidence had been presented, the trial court found for the plaintiff and rejected the defendants' claim of fraud. In its findings the trial court generally held that the evidence in support of the charge of fraud was insufficient and the court specifically found that there was no evidence to support the allegation that any of the accounts receivable transferred to defendants as of December 1956 were in fact *un*collectible.

Defendants contend that there is *no* evidence to support the finding of the trial court, hence this finding must fall and the defendants should be allowed an additional set-off in the amount of $6,755.17.

Careful examination of the record persuades us that defendants' contention is without merit. The evidence or, perhaps more accurately, the inferences deducible therefrom, on the issue of fraud was in dispute. The trial court as the trier of the facts was charged with the responsibility of making a decision. There being evidence to support its findings, they will not be disturbed on review.

In this regard, see *Andersen-Randolph Co. Inc. v. Taylor,* 146 Colo. 170, 361 P. (2d) 142, decided April 10, 1961, where numerous cases are cited in support of the proposition that findings of a trial court sitting without a jury are binding on review by writ of error unless the evidence is wholly insufficient to sustain them.

The allegedly fraudulent misrepresentations were made by Schnibbe. At the trial Schnibbe by deposition freely and frankly testified that in December 1956 he advised Bell that the accounts receivable of Golden Press totaling $22,209.47 were "collectible." He additionally explained to Bell at that same time that certain of these assigned accounts were "slow," but that he felt even these "slow" accounts would eventually be collected. There is absolutely nothing in the record to support the allegation that Schnibbe knowingly, or with a reckless disregard for the truth, uttered a false representation as to the collectibility of such accounts. On the contrary, everything points toward the conclusion that in thus expressing himself, Schnibbe was giving no more than an honest and forthright opinion as to their "collectibility."

Also, the negative finding of the trial court that there was *no evidence* to establish that as of December 1956 any of these accounts receivable were in fact *un*-collectible is quite proper and correct. Schnibbe in December 1956 admittedly described the assigned accounts receivable of Golden Press as "collectible." The fact that months later Bell Press failed to collect certain of the accounts does not in itself permit, let alone require, a holding that as of December 1956 such accounts were in fact uncollectible. At no stage of the transaction did Golden Press undertake to insure the collection of these accounts.

To rest our decision on the proposition that the trial court and not this Court is the trier of facts might lead to the erroneous conclusion that this Court believes that under the circumstances of this case the statement

of the witness Schnibbe that the accounts receivable of Golden Press were "collectible" was a statement of fact upon which an action for fraud and deceit could be successfully predicated. To avoid such, we now hold that under the circumstances presented by the record the statement of Schnibbe that the accounts were collectible was simply an expression of his opinion and not a statement of an existing fact upon which an action for fraud could be grounded.

It is well settled in Colorado that one of the essential elements of fraud and deceit is that there be a false representation of a material fact, which fact either exists in the present or has existed in the past; and, conversely, that a mere expression of an opinion in the nature of a prophecy as to the happening or non-happening of a future event is not actionable. *Morrison v. Goodspeed,* 100 Colo. 470, 68 P. (2d) 458, and *Ginsberg v. Zagar,* 126 Colo. 536, 251 P. (2d) 1080. Difficulty sometimes arises in determining whether a particular representation is a representation of fact, or is only the expression of a personal opinion. 23 Am. Jur. p. 784 points up this problem as follows:

"It is sometimes difficult to determine whether a given statement is one of opinion or one of fact, inasmuch as the subject matter, the form of the statement, the surrounding circumstances, and the respective knowledge of the parties all have a bearing upon the question, and there may be a want of one or more of the controlling circumstances. There is no certain rule by the application of which it can be determined when false representations constitute matters of opinion or matters of fact, but each case must be in a large measure adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances."

▇ Under the circumstances when Schnibbe advised Bell that the accounts receivable of Golden Press were

collectible he was only expressing his personal opinion, and not making a statement of fact upon which fraud could be predicated. Nor was he by such expression undertaking to insure or guarantee 100% collection of all the accounts. The word "collectible" in such connection means merely that an indebtedness is capable of being collected, and not that it will with certainty be collected sometime in the future. See *McDoal v. Yoemans*, (Pa.) 8 Watts, 361, 362, where it was said: "To warrant that a debt is "collectible" is to warrant that it is legally demandable and that the debtor is of competent ability to answer it, not that he will pay it, when demanded * * *."

Had Bell and Bell Press wanted to protect themselves against the possibility that certain of the accounts receivable would eventually turn out to be uncollectible, they could easily have inserted a clause to that effect in their offer. Not having done so, they now take the more arduous route of proving fraud and deceit. The trial court decreed that they had not sustained the burden which falls upon those who cry fraud. In so holding the trial court committed no error.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE FRANTZ concur.