FILED
United States Court of Appeals
Tenth Circuit

**April 7, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HOWARD MYERS individually and as
father and next best friend of ETHAN
MYERS and LUKAS MYERS, minors,

Plaintiffs - Appellants,

v.

ALLIANCE FOR AFFORDABLE
SERVICES, a/k/a or d/b/a or separately
Alliance for Affordable Health Care
Association; KENN KOCHAN, a/k/a
KENNETH KOCHAN; MID-WEST
NATIONAL LIFE INSURANCE
COMPANY, a/k/a or d/b/a or
separately Mid-West National Life
Insurance Company of Tennessee,

Defendants - Appellees.

No. 08-1354
(D. Ct. No. 1:04-CV-00396-LTB)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **TACHA**, and **HARTZ**, Circuit Judges.

Plaintiffs-appellants Howard Myers and his minor sons Ethan and Lukas

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Myers ("plaintiffs") brought claims against Alliance for Affordable Services ("Alliance"), Mid-West National Life Insurance Company ("Mid-West"), and Kenneth Kochan after plaintiffs were denied insurance coverage of medical bills incurred by Ethan and Lukas. The district court dismissed all of plaintiffs' claims on pre-trial motions, and plaintiffs now appeal. We take jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

In January 2002, plaintiffs did not have health insurance. That month, Mr. Myers contacted Mr. Kochan, an insurance agent for Mid-West who was working through Alliance. On Tuesday, January 15, Mr. Kochan came to Mr. Myers's home and assisted him in completing an application for health insurance, which sought coverage for Mr. Myers, Ethan, and Lukas. The application, which Mr. Myers signed, listed Dr. Kurt Wever as Mr. Myers's physician. The application also indicated that he had a kidney removed eight years prior, a procedure known as a nephrectomy.

In addition, the application contained various declarations, agreements, confirmations, and releases that Mr. Myers acknowledged through his signature. Under the heading "Declarations and Agreements," the application provided that "the agent does not have the authority on behalf of [Mid-West] to accept the risks, or to make, alter, or amend the coverage" and "no insurance will take effect unless and until the Application is approved by [Mid-West] and the policy is

- 2 -

delivered to the Applicant while the conditions affecting the insurability are and have remained as described herein . . . ." Similarly, Mr. Myers signed a "Confirmation of Presentation and Conditional Receipt" acknowledging that the payment of an initial premium did not create insurance coverage.[1] The Confirmation of Presentation also provided that the insurance for which Mr. Myers applied would "not become effective until the policy is delivered by [Mid-West]" and that "neither [Mr. Kochan] or [Mid-West] is bound by any knowledge or statements made by [Mr. Kochan] . . . unless set forth in writing in the application and this receipt." Furthermore, at the same January 15 meeting, Mr. Myers signed a medical records release which provided, "I understand that coverage is not effective unless and until approved by [Mid-West]."

Mr. Kochan returned to the Myers's home the following evening, Wednesday, January 16, to obtain additional information regarding Mr. Myers's nephrectomy. Mr. Kochan turned in the application, the additional information, and an initial premium payment check written by Mr. Myers in the amount of

---

[1]The Confirmation of Presentation provided, in pertinent part:

I authorize the check tendered with the application to be cashed immediately upon receipt by the home office. The Representative has explained to me that [Mid-West]'s cashing of my check does not create coverage with [Mid-West] and should [Mid-West] fail to approve my application for coverage, I will receive a full refund of all monies given to the Representative for the insurance I have applied for.

$376.11 on Friday, January 18 at Alliance's weekly "turn-in" meeting. Alliance, in turn, mailed the application to Mid-West that Friday or the following Monday. Mid-West received the application and began the underwriting process on Tuesday, January 22.

Tragically, the same day that Mid-West received the application, Ethan and Lukas were involved in an automobile collision with a drunk driver. Medical bills for the two boys exceeded $1,000,000.

On January 31, Mid-West wrote a letter to Mr. Myers indicating that it would be unable to consider his application until it received medical records relating to his nephrectomy, and that it had requested a third party obtain the records from Dr. Wever. Two months later, on March 21, Mid-West notified Mr. Myers that it was suspending the processing of the application because it never received the necessary medical records. On March 22, Mid-West issued three "refund" checks to Mr. Myers and refused to issue him an insurance policy. Mid-West later refused to pay for the medical bills incurred by Ethan and Lukas.

Plaintiffs filed a complaint (the "amended complaint") against Mid-West, Alliance, and Mr. Kochan (collectively, "defendants") in El Paso County District Court in January 2004. The amended complaint raised claims for breach of contract, bad faith breach of an insurance contract, breach of fiduciary duty, fraudulent and negligent misrepresentation, negligence, and outrageous conduct. Defendants removed the action to federal court, contending that Mr. Kochan, the

- 4 -

only non-diverse party, was not subject to suit because he had filed for bankruptcy one month prior to the filing of the amended complaint and was protected by the automatic stay. The district court agreed that the claims against Mr. Kochan violated the automatic stay in the bankruptcy case, dismissed the claims against Mr. Kochan as void *ab initio*, and denied plaintiffs' motion to remand.

In March 2004, Alliance filed a motion to dismiss all of the claims against it pursuant to Fed. R. Civ. P. 12(b)(6). The district court granted Alliance's motion and dismissed plaintiffs' claims. Plaintiffs subsequently filed a Motion to Amend Judgment, and in the Alternative, Motion to Reinstate and Amend Their Amended Complaint, which the district court denied.

In March 2008, plaintiffs sought to amend the amended complaint to add a new claim against Mid-West, the only remaining defendant. The district court also denied this motion to amend. Finally, following Mid-West's motion, the district court granted summary judgment in favor of Mid-West on all claims and, in doing so, also struck portions of plaintiffs' expert testimony.

Plaintiffs now appeal the dismissal of their claims against Alliance pursuant to Rule 12(b)(6) and against Mid-West on summary judgment. They also contend that the district court erred in denying their Motion to Amend Judgment, and in the Alternative, Motion to Reinstate and Amend Their Amended Complaint, as well as their March 2008 motion to amend the amended complaint. Finally,

plaintiffs contest the dismissal of Mr. Kochan from this action and argue that the district court improperly struck portions of their expert testimony in support of their opposition to summary judgment.

## II. DISCUSSION

A.     Plaintiffs' Claims Against Alliance and Mid-West

1.     *Standards of Review*

The district court dismissed the claims against Alliance pursuant to Fed. R. Civ. P. 12(b)(6); therefore, we review the decision to dismiss de novo. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "[W]e assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Id*. To survive a motion to dismiss, a plaintiff must "'nudge his claims across the line from conceivable to plausible.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (alterations omitted). "If the plaintiff fails to allege an essential element of his claim, the complaint is appropriately dismissed pursuant to Rule 12(b)(6)." *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1102 (10th Cir. 2009).

Likewise, we review de novo the district court's dismissal of the claims against Mid-West in the summary judgment order, applying the same standard as the district court. *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739–40 (10th Cir. 2007). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 740 (quotations omitted).

## 2. *Breach of Contract*

Plaintiffs brought breach of contract claims against both Alliance and Mid-West. Under Colorado law, a plaintiff must plead the following elements to state a claim for breach of contract: (1) the existence of a contract; (2) plaintiff's performance or some justification for nonperformance; (3) defendant's failure to perform; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

The district court dismissed plaintiffs' breach of contract claim against Alliance because they failed to allege the existence of a contract with Alliance in their amended complaint. On appeal, plaintiffs argue that Mr. Myers had an oral contract with Alliance requiring Alliance to "procure insurance" for him. Plaintiffs did not, however, plead any facts in their amended complaint suggesting the formation or existence of such a contract. Thus, the district court properly dismissed plaintiffs' breach of contract claim against Alliance.

Similarly, plaintiffs concede that Mid-West never issued a health insurance policy to Mr. Myers under which Mid-West was contractually bound to provide coverage to them. Nevertheless, they argue that representations by Mr. Kochan as an agent of Mid-West created binding coverage from Mid-West on the date that Mr. Myers completed his application and tendered the first premium payment.

The district court ruled that there was no contract between the parties and dismissed the claim. We agree.

Under Colorado law, an agent can bind a principal to a contract if he is acting within the scope of his actual or apparent authority. *Life Investors Ins. Co. of Am. v. Smith*, 833 P.2d 864, 868 (Colo. Ct. App. 1992). "Actual authority" is the authority which the principal has in fact given to the agent. *Id.* "Apparent authority exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." *Nat'l Cash Register Co. v. Lightner*, 388 P.2d 781, 787–88 (Colo. 1964) (quoting Restatement (Second) of Agency, § 8 cmt. c (1958)). "[I]f the limitation of an agent's authority is known to the person with whom he deals, the principal is not bound if the agent exceeds his authority." *Id.* at 788.

Assuming that Mr. Kochan's oral statements could be construed as sufficient to create an agreement between Mid-West and plaintiffs, the evidence clearly establishes that Mr. Kochan did not have actual authority to bind Mid-West to any such contract. In *Life Investors*, the court looked to the agency agreement between the agent and insurance company to determine the scope of the agent's actual authority. 833 P.2d at 868. Here, Mr. Kochan's agency agreement with Mid-West authorized him "to solicit applications for POLICIES offered by Mid-West" and required him to "submit every insurance application subject to acceptance or rejection at the SOLE DISCRETION of . . . MID-

WEST."[2]  These express provisions show that Mid-West did not give Mr. Kochan the authority to bind it to insurance coverage and that Mr. Kochan was informed of his limited authority.

Additionally, Mr. Kochan did not have apparent authority to bind Mid-West to coverage.  The insurance application Mr. Myers signed provided that Mr. Kochan did not have authority "to make, alter, or amend coverage," and that "no insurance will take effect unless and until the Application is approved by [Mid-West]."  Similar disclaimers appeared in other documents signed by Mr. Myers. Given Mr. Myers's acknowledgment, through his signature, of these clear restrictions on Mr. Kochan's authority, Mr. Myers's belief that Mr. Kochan could issue insurance or bind Mid-West to coverage was objectively unreasonable.  *See Bayless v. Christie, Manson & Woods Int'l, Inc.*, 2 F.3d 347, 353 (10th Cir. 1993) ("'[I]f a person has means of knowledge reasonably open to him as to the limits of the agent's authority, he cannot hold the principal unless he uses ordinary diligence to ascertain them . . . . [A person] has means of knowledge if he knows or has reason to know that the authority is evidenced by a document open to and intended for his inspection.'") (quoting Restatement (Second) of Agency, § 167 cmt. a (1958)).

Finally, plaintiffs argue that Mr. Kochan was a "general agent" of Mid-

---

[2]The agency agreement between Mr. Kochan and Mid-West is not part of the record on appeal; the district court, however, relied on it and the parties do not contest the court's recitation of this language in the agreement.

West and thus able to issue binding health insurance on its behalf. A general agent's misrepresentations as to policy coverage are indeed binding upon the agent's principal. *Cadez v. Gen. Cas. Co. of Am.*, 298 F.2d 535, 537 (10th Cir. 1961). Nevertheless, an agent who is limited to receiving and accepting proposals for insurance is not a general agent and has no power to bind an insurance company or write insurance. *See id.* Mr. Kochan was only given authority to solicit applications; therefore, he was not a general agent of Mid-West and was unable to bind it to coverage. Accordingly, the district court properly dismissed plaintiffs' breach of contract claim against Mid-West.

3. *Bad Faith Breach of an Insurance Contract*

Plaintiffs also brought claims for bad faith breach of an insurance contract against both Alliance and Mid-West. "The basis for liability in tort for the breach of an insurer's implied duty of good faith and fair dealing is grounded upon the special nature of the insurance contract and the relationship which exists between the insurer and the insured." *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo. 1984). A claim for bad faith breach of an insurance contract requires the existence of a contract. *See id.*; *Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 814–15 (Colo. Ct. App. 2006). As we just held, however, plaintiffs did not allege in their amended complaint the existence of a contract between themselves and Alliance, and the undisputed evidence demonstrates that there was no contract between themselves and Mid-West. Accordingly, the district court

- 10 -

properly dismissed plaintiffs' claim for bad faith breach of an insurance contract against Alliance under Rule 12(b)(6) and against Mid-West on summary judgment.

4.     *Breach of Fiduciary Duty*

The district court properly dismissed plaintiffs' breach of fiduciary duty claims against Alliance and Mid-West.  Under Colorado law, a plaintiff must plead the following elements to state a claim for breach of fiduciary duty: (1) the defendant was acting as a fiduciary of the plaintiff; (2) the defendant breached a fiduciary duty to the plaintiff; (3) the plaintiff incurred damages; and (4) the defendant's breach of fiduciary duty was a cause of the plaintiff's damages. *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. Ct. App. 1993). Furthermore, a claim for breach of fiduciary duty is improper unless "the confidential relationship giving rise to the duty [was] established prior to the date of the transaction that gives rise to the claim." *Nicholson v. Ash*, 800 P.2d 1352, 1355 (Colo. Ct. App. 1990).

Plaintiffs do not allege that their relationship with Alliance or Midwest existed prior to the date Mr. Myers attempted to purchase insurance from Mid-West through Alliance.   The amended complaint states only that Alliance provided Mr. Myers with "a benefit summary for the health insurance he applied for," "accepted and cashed a check for that insurance," and submitted the "application for insurance to Mid-West."  Plaintiffs allege that Mid-West

- 11 -

accepted the application and the initial premium check written by Mr. Myers. Plaintiffs do not contend, however, that their relationship with either Alliance or Mid-West predated the transaction giving rise to this claim. Because Colorado law requires a pre-existing confidential relationship, the district court correctly dismissed plaintiffs' breach of fiduciary duty claims.

5.      *Fraudulent Misrepresentation*

Plaintiffs asserted fraudulent misrepresentation claims against Alliance and Mid-West based on statements by Mr. Kochan. To state a claim for fraudulent misrepresentation, a plaintiff must allege: (1) a knowing misrepresentation of material fact; (2) reliance on the material misrepresentation; (3) the right or justification in relying on the misrepresentation; and (4) reliance resulting in damages. *Williams v. Boyle*, 72 P.3d 392, 399 (Colo. Ct. App. 2003). The alleged misrepresentation must be of a material fact which either exists in the present or has existed in the past. *Bell Press, Inc. v. Phillips*, 364 P.2d 398, 400 (Colo. 1961). "[A] mere expression of an opinion in the nature of a prophecy as to the happening or non-happening of a future event is not actionable." *Id.*

In the amended complaint, plaintiffs allege that Mr. Kochan told them that "everything was being handled in an expeditious fashion, that everything was in order, and that the policy for which they had applied would be issued." The district court held that Mr. Kochan's statements were not statements of material fact and thus could not support a claim of fraudulent misrepresentation. We

agree. Mr. Kochan's statements concerning the handling of the insurance application were mere expressions of his opinion. Furthermore, the representation that the policy "would be issued" related to the happening or non-happening of a future event. Therefore, the district court properly dismissed this claim against Alliance.

Plaintiffs' claim against Mid-West is more developed. In their response to Mid-West's motion for summary judgment, plaintiffs asserted that Mr. Kochan told them that they were insured beginning January 15, 2002, upon Mr. Myers's completion of the application and payment of the first premium. They further alleged that Mr. Kochan fraudulently misrepresented that: (1) he and his wife were insured by a similar Mid-West health insurance plan; (2) the policy was for "100% coverage, up to [one] million dollars, and with a $5,000 deductible"; (3)"Mr. Myers was bound and had the insurance, and the only way the policy would be cancelled [was] if there was something wrong on the application with Mr. Myers' medical"; and (4) the written policy would be sent to Mr. Myers within a week or two. The district court held, and we agree, that plaintiffs raised a triable issue of fact whether Mr. Kochan made material misrepresentations regarding coverage. Nevertheless, plaintiffs must also establish a triable issue regarding their justifiable reliance upon such statements. This they have not done.

The application and other forms which Mr. Myers signed contained clear

and unambiguous disclaimers of immediate coverage and express limitations on Mr. Kochan's authority to bind Mid-West. Plaintiffs' reliance on any contradictory statement by Mr. Kochan concerning immediate coverage is therefore unreasonable as a matter of law. *See Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587 (Colo. Ct. App. 2000) ("If the plaintiff has access to information that was equally available to both parties and would have led to discovery of the true facts, the plaintiff has no right to rely upon the misrepresentation."). Accordingly, the district court properly granted Mid-West summary judgment on plaintiffs' fraudulent misrepresentation claim.

6. *Negligent Misrepresentation*

Plaintiffs also allege that they incurred damages due to negligent misrepresentations by Mr. Kochan and Alliance. Under Colorado law, negligent misrepresentation only applies when there has been a misrepresentation of an existing fact; a party is not liable for "negligently failing to perform." *High Country Movin', Inc. v. U.S. West Direct Co.*, 839 P.2d 469, 471 (Colo. Ct. App. 1992). A plaintiff must also allege that it relied on the misrepresentation when entering into a transaction with a third party. *See Snoey v. Advanced Forming Tech., Inc.*, 844 F. Supp. 1394, 1400 (D. Colo. 1994).

Plaintiffs base their negligent misrepresentation claim upon Mr. Kochan's assurances that "everything was being handled in an expeditious fashion, that everything was in order, and that the policy for which they had applied would be

issued." As discussed above, these were representations of Mr. Kochan's opinion, not of fact, and related to the occurrence or non-occurrence of a future event. *See Bedard v. Martin*, 100 P.3d 584, 592 (Colo. Ct. App. 2004) ("The misrepresentation must be of a material past or present fact."). Moreover, plaintiffs did not allege that they entered into the transaction with Mid-West *because* of the misrepresentations, nor could they as the assurances came after Mr. Myers had already completed and submitted his application. The district court thus properly dismissed plaintiffs' negligent misrepresentation claim.

7. *Negligence*

Plaintiffs allege that both Alliance and Mid-West negligently caused them harm. "To state a claim sounding in negligence upon which relief may be granted, a complaint must identify (1) a legal duty the defendant owes to the plaintiff, (2) the defendant's breach of that duty, and (3) an injury to the plaintiff that is (4) proximately caused by the defendant's breach." *Dotson v. Bernstein*, 207 P.3d 911, 913 (Colo. Ct. App. 2009).

In their amended complaint, plaintiffs allege that Alliance was negligent "in the processing of Plaintiff's application, including but not limited to their failure to promptly submit the application and in the processing of requests for further information, and Plaintiffs incurred damages as a result of such negligence." Plaintiffs did not, however, plead the existence of any facts giving rise to a duty on the part of Alliance to submit or process the application any

earlier than it did. Plaintiffs also alleged but failed to identify how any delay in submitting Mr. Myers's application caused them harm—in other words, how submitting the application to Mid-West earlier would have resulted in an insurance policy being in effect and providing them coverage on the day Ethan and Lukas were injured. "Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (alterations and quotation omitted). Therefore, the district court properly dismissed the negligence claim against Alliance.

Additionally, plaintiffs maintain on appeal that Mid-West was negligent by "having an untrained agent that had never seen its policy, who was unsupervised on his first sale, making misrepresentations to the Plaintiff in order to secure a policy application" and who "did not deliver the application disclosure to the applicant." In their response to Mid-West's motion for summary judgment, however, plaintiffs argued only that Mid-West was "negligent in the processing of Plaintiff's application" and that "Mid-West should have reviewed the application and approved the application no later than January 22, which was the day of the children's accident." It is well-settled law in this circuit that "a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory." *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993). "This rule is particularly apt when dealing with an appeal from a grant of

summary judgment" and applies even when a party raises a different but related legal theory. *Tele-Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1232, 1233 (10th Cir. 1997). Because plaintiffs are attempting to raise an argument that was not before the district court, we do not address it.

8. *Outrageous Conduct*

Finally, plaintiffs contend that the district court erred in dismissing their outrageous conduct claims against Alliance and Mid-West. They fail, however, to provide any meaningful analysis or legal argument on the issue. Plaintiffs merely discuss the legal standard they believe applicable without any attempt to cite allegations or facts supporting their claim or challenging the district court's dismissal. Because of their inadequate briefing, plaintiffs have waived appellate consideration of this issue. *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002) ("[I]ssues will be deemed waived if they are not adequately briefed."); *Am. Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992) ("It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal.").

B. Motion to Amend the Judgment, and in the Alternative, Motion to Reinstate and Amend Their Amended Complaint

Plaintiffs also appeal the denial of their Motion to Amend Judgment, and in the Alternative, Motion to Reinstate and Amend Their Amended Complaint

pursuant to Fed. R. Civ. P. 59(e), which asked the district court to reconsider its dismissal of plaintiffs' claims against Alliance or to permit plaintiffs to correct the deficiencies identified in the order of dismissal.  We review the district court's denial of a motion under Rule 59(e) for abuse of discretion.  *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

A motion under Rule 59(e) is warranted when: (1) there has been an intervening change in the controlling law; (2) there is newly discovered evidence which was previously unavailable; or (3) it is necessary to correct clear error or prevent manifest injustice.  *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  Furthermore, after a motion to dismiss has been granted, a court may only consider a motion to amend a complaint if the case is reopened pursuant to a motion under Rule 59(e) or Rule 60(b).  *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989).

In their motion, plaintiffs did not allege any new facts, present any new evidence, or claim that there had been any intervening change in the law.  Instead, plaintiffs reasserted the arguments they made in opposition to Alliance's motion to dismiss.  It was therefore not an abuse of discretion for the district court to deny plaintiffs' motion to amend judgment, and to accordingly deny plaintiffs' request to reinstate and amend their amended complaint.

C.     Motion to Amend the Amended Complaint

After obtaining an exemplar of the insurance policy for which Mr. Myers

had applied and which provided only minimal coverage, plaintiffs filed a motion in March 2008 to further amend the amended complaint to add a claim of fraud against Mid-West. The district court denied the motion to amend, concluding that there had been undue delay in bringing the motion and the proposed amendment would result in prejudice to Mid-West. "The grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (alteration omitted). Therefore, we review the denial of a motion to amend for abuse of discretion. *Id.*

Because Mid-West had filed a responsive pleading, plaintiffs could only amend their amended complaint "by leave of the court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Leave to amend is freely given unless there is a showing of: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; or (5) futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiffs filed their motion to amend the amended complaint on March 10, 2008, four years after the initial complaint had been filed and one year after the deadline for amendment of the pleadings had expired. They argued that the proposed amendment was timely because they were unaware of Mid-West's intent to present a defense based on the terms of the policy—that is, that even if Mid-

West had issued the policy, its terms would not have covered the medical bills of Ethan and Lukas—until Mid-West provided an exemplar of the policy in September 2007. As the district court noted, however, Mid-West gave notice of such a defense in its answer to plaintiffs' amended complaint in March 2004, and plaintiffs received a copy of the exemplar six months before moving to amend the amended complaint.

Moreover, plaintiffs filed their motion to amend approximately three weeks before the deadline for non-expert discovery and six months before trial. The amendment sought to introduce an entirely new theory into the case based on an alleged fraudulent and deceptive scheme to sell "junk" insurance policies. The addition of the new claim would have required significant additional discovery relating to the alleged scheme, which involved Mid-West's parent company and other affiliated companies. With the discovery deadline about to expire, Mid-West would certainly have been prejudiced by the proposed amendment. *See Minter*, 451 F.3d at 1208 ("Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment.") (quotations omitted). Based on these facts, we cannot say that the district court abused its discretion in denying plaintiffs' motion to amend.

D.    Claims Against Mr. Kochan

The district court determined that plaintiffs' claims against Mr. Kochan were void *ab initio* as violative of the automatic stay in bankruptcy. Later, the

bankruptcy court closed the bankruptcy proceeding without ruling on some of plaintiffs' claims, stating that the bankruptcy case would be reopened once the claims before the district court had been determined. In this appeal, plaintiffs argue (without citation to any authority) that they have "preserved" their claims against Mr. Kochan and request that we allow them to proceed with such claims on remand if we reverse the district court's dismissal of the claims against Alliance and Mid-West. Because we affirm the district court's dismissal of claims against both Alliance and Mid-West, however, we do not address plaintiffs' contention.

E.    Expert Affidavits

Finally, plaintiffs contend that the district court erred in striking portions of affidavits filed by plaintiffs' insurance experts Mark Anderson and Burt Bernstein. We review the district court's decision to strike portions of the affidavits for abuse of discretion. *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1227 (10th Cir. 2000).

The district court struck paragraph 3 of Mr. Anderson's affidavit and a portion of paragraph 4 of Mr. Bernstein's affidavit because they included improper legal conclusions. "Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998). Paragraph 3 of Mr. Anderson's affidavit concluded that

Mr. Kochan was a "general or captive agent" of Mid-West "with the authority to bind [Mid-West] to the health insurance Mr. Kochan represented they were purchasing." It further concluded that "the payment from the Myers of monies related to insurance further indicates that Mid-West was bound to the insurance in question on January 15, 2002." Likewise, paragraph 4 of Mr. Bernstein's affidavit concluded that "when Mr. Kochan accepted a premium check . . . Mid-West became bound to that health insurance which Mr. Kochan had represented would be issued." We agree with the district court that these are improper legal conclusions and were properly struck.

Plaintiffs also maintain that the district court erred when it deemed a portion of Mr. Bernstein's affidavit unreliable because it was "contradicted by a large number of authorities cited in Mid-West's reply brief." That portion of Mr. Bernstein's affidavit provided:

> [B]ased on industry standards, the insurance policy that Mr. Kochan represented to the Myers would issue, was effective the date that the application and the funds were received by Mr. Kochan, which was January 15, 2002, and at the very latest, January 21, 2002, when the funds and the application arrived at [] Mid-West's offices.

We agree that the district judge invaded the province of the jury when it opined on the reliability of such evidence. Nevertheless, that portion of Mr. Bernstein's affidavit was a conclusory allegation and of no probative value. *See Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) ("Whether plaintiffs' affidavits were sufficient to create a genuine issue of material fact must be evaluated in

light of the principle that conclusory allegations without specific supporting facts have no probative value." (quotations omitted)). Therefore, it would not have affected the district court's grant of summary judgment and any error was harmless.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM.  Plaintiffs' motion to take judicial notice is DENIED, but we GRANT their motion to file a supplemental appendix.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge